Jack D. HESS, Michael C. Moore, Manuel McClaskey, James Simerly, Raymond C. Hickok, Jr., Harvey G. Crow, Jr., Steven C. Marriott, Roy D. Breit, Appellants,

v.

William J. BENNETT (Mayor of St. Joseph, Missouri), Respondent.

No. KCD 28686.

Missouri Court of Appeals, Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1977.

William E. Shull, Edward A. Coulson, Kansas City, for appellants.

Randall R. Jackson, St. Joseph, for respondent.

Before DIXON, P. J., and WASSER-STROM and TURNAGE, JJ.

WASSERSTROM, Judge.

By this action, eight former police officers sought judicial review in the Circuit Court under Chapter 536 RSMo 1969 and Rule 100 of the action by the Mayor of St. Joseph, Missouri, in upholding severance of their employment from the St. Joseph Police Department. From the judgment of the Circuit Court affirming the Mayor, all eight appealed. Since the filing of this appeal, the claims of appellants Hess and Moore have been resolved to the mutual satisfaction of all parties and their appeals have been dismissed. The appeals of the other six former officers remain for disposition.

In April 1975, an investigation by the St. Joseph Chief of Police indicated that a number of the police officers had been engaged in sex acts with a certain young woman in St. Joseph, both on and off duty. After confronting each of the officers in question on April 25, the Chief called each of them in to his office on the morning of April 26. He then stated to each that he had a choice of resigning from the force or having the Chief issue a suspension letter followed at the end of seven days by termination of employment. Hess and Moore each refused to resign and was given a letter of suspension. The other six chose to sign letters of resignation.

Subsequently appellants retained counsel and filed an appeal to the city Personnel

Board pursuant to Section 7.10 of the City Charter. That section provides that any employee under the classified service "who shall be discharged or reduced in rank or compensation" shall have the privilege of a public hearing before the Personnel Board, that the Board shall submit its recommendations to the Mayor, and that the latter may then at his discretion reinstate or restore the employee.[1]

At the hearing before the Board, the city attorney filed a motion to dismiss each of the appeals now in question on the ground that each of the affected appellants "resigned and were not discharged or reduced in rank or compensation." The Board took extensive evidence on the issue of whether the resignations had been coerced and ultimately denied the motion on the following grounds: that "the City failed to prove the allegations contained in its Motion to Dismiss by a preponderance of the credible evidence;" and that "fairness and justice in cases of the seriousness here involved require that these appeals be heard on their merits." With respect to the merits of the case, the Board recommended that Moore and Hess be reinstated; that Hickok, Simerly, Crow and Marriott be suspended without pay for 30 days; that McClaskey be suspended for 30 days and placed on 120 days probation; and that Breit be suspended for 30 days without pay and that he be reduced to the lowest patrolman pay rate and that he be placed on probation for 120 days.

When these recommendations reached the Mayor, he rejected and declined to follow them. The Mayor's action was explained in an identical letter sent to each of these appellants dated June 11, 1975. The key portion of the Mayor's rulings was as follows:

1. The City Personnel Manual, Rule Number XVI–1 also sets forth the employee's right to a hearing before the Personnel Board "in a case involving his discharge or reduction in rank or compensation."

2. The Mayor also stated in each letter that "there is not the least doubt in my mind after reviewing the transcript but that you are guilty of conduct which is unbecoming to a member

"I have given careful consideration to all of the evidence recorded in the transcript and have concluded that I must disregard the Personnel Board's action in refusing to dismiss your appeal to that Board. "The Personnel Board indicated that the City had failed to prove their Motions to Dismiss, but this finding is totally unsupported by the evidence. The City produced evidence by Chief Glenn Thomas, his Administrative Aide Mrs. LaVerne Boyer, various ranking members of the Department, and very significantly, elicited admissions from you that you were not coerced into resigning from the St. Joseph Police Department. I find that the evidence overwhelmingly supports a finding that you resigned from the Department of your own free will and that consequently, no formal charges were made against you which the City could show as causes of dismissal. It has always been the position of the City and understood by its employees, as testified to by the President of the F.O.P., that employees who resign do not have the right to appeal to the Personnel Board. "Consequently, I believe the action of the Personnel Board was erroneous in this regard. Your resignation has been accepted, finalized, and your termination from the Department will stand, effective as of that date."[2]

Appellants' Points on Appeal are that the Mayor did not act in an impartial, unprejudiced and unbiased manner; that his decision was improper, illegal and an abuse of discretion in that it was not supported by evidence and in contradiction of existing policies and procedures which did not condemn off-duty sexual activity; and that his decision was the result of improper conclu-

of the City's Police Force, and in fact there is evidence in the transcript that you have even admitted such misconduct on occasions prior to the Personnel Board hearing." However, it is unnecessary to review these additional findings, inasmuch as hereinafter shown the Mayor's action is fully supported on the ground that each appellant resigned by his own free uncoerced act.

sions and evidence and in violation of the Federal Constitution by denying appellants the right to cross-examination, due process of law and equal protection. Respondent answers each of those contentions in his brief, but also makes a counterpoint that each of these six appellants severed his employment by resignation and that those resignations are not subject of appeal or judicial review. On oral argument before this court, counsel for appellants conceded that a voluntary resignation is not subject to review, stating in this regard:

"I think there are two basic questions. Number 1 is the question of resignation. If the court finds that the resignations were knowingly, voluntarily made and the men fully understood that they would lose their right of appeal, then we belong outside because obviously then the trial court was right in sustaining the action."

However, appellants' counsel went on in oral argument to attack the voluntary character of the resignations, on the grounds that the circumstances under which the resignations were given were inherently coercive as to each of the officers; that the Police Chief had committed a breach of good faith in that he had represented that there would be no publicity, but that in fact considerable publicity was given immediately after the resignations; and that the resignations were not knowingly made in that the officers did not realize that by resigning they were waiving their rights to a review by the Personnel Board.

It is questionable whether the argument as outlined by counsel on oral argument has been properly preserved by the Points on Appeal as set forth in the brief. Nevertheless, pursuant to a generous interpretation, the points as outlined in oral argument will be considered and ruled.

 If these resignations were in fact the result of duress or fraud or otherwise involuntary, then the situation would be equivalent to a discharge, and an inquiry would be necessary into whether under all of the evidence the terminations of employment were properly imposed. *Cacchioli v. Hoberman*, 31 N.Y.2d 287, 338 N.Y.S.2d 865,

291 N.E.2d 117 (1972); *Varela v. Board of Police Commissioners*, 107 Cal.App.2d 816, 238 P.2d 62 (1952); *People v. Voorhis*, 20 N.Y.S. 941 (1892); *Rider v. City of Batesville*, 220 Ark. 31, 245 S.W.2d 822 (1952). However the record here fails to show any duress, fraud or involuntariness such as is contended for by appellants.

 With respect to the claim of duress, the legal test to be applied is whether the injured party was bereft of the free exercise of his will power—whether he was subjected to such a state of mind as to be deprived of free moral agency. *Weisert v. Bramman*, 358 Mo. 636, 216 S.W.2d 430 (1949); *Coleman v. Crescent Insulated Wire & Cable Co.*, 350 Mo. 781, 168 S.W.2d 1060 (1943); *Ensign v. Home for Jewish Aged*, 274 S.W.2d 502 (Mo.App.1955). The evidence in this case falls far short of showing duress under that standard. When the Police Chief called in each of the appellants, he did no more than to offer each of them a choice between voluntary resignation and a letter of suspension to be followed by involuntary termination. A number of witnesses, including some of the appellants themselves, testified that there was no compulsion or "arm twisting." Indeed, appellants Hickok, Simerly, Crow and Breit (as well as Bryne who resigned at the same time) all conceded that their respective resignations constituted a matter of their own free choice. Further, the fact that Hess and Moore refused to resign tends to show that no effective duress was brought to bear.

With respect to the suggestion of fraud on the part of the Police Chief, nobody claimed that he made any promises or threats, nor is there any testimony that he made any misrepresentation to any of the officers who submitted resignations. The closest intimation along this line is the agreed fact that Chief Thomas told the appellants that on resignation only a statement to that effect would go into the personnel file, whereas termination proceedings would require a statement of charges and a full summary to be inserted. The record shows nothing to show that the personnel file of any appellant contained anything beyond what Chief Thomas said.

■ What appellants complain about is that the news conference called by the Mayor in the afternoon following the resignations frustrated appellants' expectation that there would be no publicity. However, with regard to this matter of media publicity, no representation was made which can support a charge of fraud. Chief Thomas testified that he made no promise or prediction with respect to what newspaper publicity there might be and that in fact he stated that he had no control over the news. There was also other testimony supporting the conclusion that Chief Thomas did not represent that no newspaper publicity would result, including the testimony of appellants Hickok and Simerly.[3]

■ With respect to the contention that the resignations were not knowingly made, the appellants did not testify that they submitted their resignations in any mistaken reliance upon a right of appeal to the Personnel Board. Their testimony before the Personnel Board does not indicate that their decision to resign was so motivated or that they even had an appeal in contemplation at that time. Moreover, and of decisive importance, that right of appeal was a matter of law, set forth in the City Charter, ignorance of which can furnish no valid basis for avoiding an otherwise voluntary action. Appellants are held to constructive knowledge of this legal provision. *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856, p. 859, decided by Missouri Court of Appeals, St. Louis District, May 24, 1977.

It must be concluded that the Mayor was correct in his finding that the City's motion to dismiss as filed before the Personnel Board was entitled to be sustained.

Affirmed.

All concur.

---

3. The following question was put to Hickok and answered as follows: "Q. Did he [Chief Thomas] ever indicate that if you resigned that publicity would be subdued or would not be given to the newspapers? A. He said that if we resigned that our name would be in the newspaper and that probably would be Conduct Unbecoming an Officer, or something like that." Simerly's testimony was quite similar.