Charles A. DAFFIN, Appellant,

v.

Frances Louise DAFFIN, Respondent.

Nos. KCD 29223, KCD 29279.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer
Denied June 12, 1978.

William C. Partin, Kansas City, for appellant.

Joseph R. Borich, James R. Derting, Collet & Borich, Kansas City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

These appeals come from an order to set aside the property provisions of a dissolution of marriage decree for fraud on the court of rendition in the procurement of the judgment. The husband appeals on the ground that the prior decree entered was on an agreed property settlement not unconscionable in terms and therefore beyond the power of a court of equity to affect. The wife appeals on the ground that the subsequent order was not just as a division of the marital property nor as allowances for maintenance and attorney fee.

The decree of dissolution found fraudulent was entered on a petition of the husband and the entry of appearance of the wife on waiver of personal service and consent to trial and judgment without further notice. The wife was without the advice of counsel throughout these proceedings. The separation agreement of the parties, drafted by counsel for the husband, was presented to the court for approval. The agreement undertook to apportion the personal property of the parties, provided for joint ownership as tenants in common of the townhouse after dissolution but for the use of the wife and minor son until the child left the home, acceded to the fitness of the wife for the custody of the son, and provided for support money of $40 per week on the basis of a net $217 weekly salary. The agreement made no mention of a military pension of $500.59 he received every month. The court found the settlement agreement was not unconscionable and that the interests of the parties in the marital property were determined by its terms and entered judgment accordingly. The wife let the proceedings and judgment go without contest.

After the lapse of some months, the wife brought a direct action to set aside the decree, except as to the dissolution of the marriage, on grounds that the judgment, separation agreement and waivers of appearance and contest were procured by fraud practiced upon her and upon the court. The wife contended that her actions were overborne by the husband who dominated her to such extent that she was forced to rely on his advice to waive her rights of contest and to have the court divide the marital property. She contended also that the nondisclosure of the military pension in the separation agreement was a fraudulent concealment from the court of a valuable marital asset and so was not adjudicated by the decree.

The evidence was that the marriage continued for twenty-four years. They married when he was nineteen and she only fourteen; she represented herself to be sixteen at his suggestion to avoid objection.

He had just enlisted in the Marine Corps where he continued service until retirement nineteen years later. Two children were born to them and at the time of dissolution the daughter was of full age and the boy, eighteen, remained at home. The wife accepted whatever employment was available during the marriage and contributed throughout to the common financial needs. The husband tended to the financial affairs almost exclusively and dominated their activities. After twenty-four years of marriage, the husband met a younger woman, his present spouse, and began to urge a dissolution of the marriage but the wife resisted. He persisted and she became distraught and developed symptoms of illness. She began under the consultation and care of a physician. He found her in stress from the marital situation—passive and compliant. She was in this state when the husband announced he had commenced the dissolution action. It was the opinion of the physician that she could not have effectively negotiated a settlement agreement or made any other judgment as to marital rights.

The husband filed petition for dissolution of the marriage on December 18, 1974. The next day he took her to the office of his counsel to sign papers. There she was presented the separation agreement for the first time and was asked by counsel to read and sign the document. She had not discussed the terms with her husband; he had assured her she need have no worry because what was done was for her benefit. He had told her also that the lawyer represented both of them and would look after her interests—and expected her to rely on that assertion as "[s]he had relied on everything else [he] said for twenty years". At the office, counsel expressly requested that she read the document before she gave her signature. She was very upset and tearful, however, and so only feigned examination of the agreement and signed it without understanding. [The entry of appearance and waiver appear to have been executed also at that time.]

The separation agreement identified the marital property to include the townhouse,

furniture, household goods, automobiles and bank account, to the total value of about $12,000. The agreement made no reference to the $500 monthly military pension which then had an actuarial value of $64,491.

While the petition pended, the husband suggested a reconciliation, so he returned to the home and they resumed intimacy. Two days later he moved out again in anger. The wife assumed that because of resumption of the marital relation the dissolution hearing would be rescheduled on further notice, but the cause was heard about two weeks later without her knowledge or presence.

The husband appeared in person at the dissolution hearing and gave evidence to prove the cause of action but made no mention of the military pension he received regularly. In response to examination by his counsel the husband testified:

Q. Now, Mr. Daffin, in relationship to this separation agreement, you have made disposition of all your marital and non-marital property, is that correct?

A. Yes.

On this evidence the court found the marriage irretrievably broken and ordered dissolution. The custody of son Michael and $40 per week for his support was awarded the wife. The court further found the separation agreement set apart to the parties the property of each and was not unconscionable and, as such, was "determinative of all property interest owned or claimed by both parties hereto." No maintenance was awarded.

The action to set aside the uncontested judgment for fraud on the court in the procurement followed some months later. The court vacated the judgment [except as to dissolution of the marriage] and, as amended, divided the marital property [except for the military pension] substantially as delineated by the separation agreement, declared son Michael an emancipated person, ordered the parties to sell the townhouse and share the proceeds at such time

as the son should remove from residence, adjudged the military pension a marital asset and ordered the husband to pay the wife $175 per month [to commence thirty days after sale of the townhouse and to terminate upon the death of either party or remarriage of the wife] from that retirement benefit both as a division of marital property and as maintenance.

These orders rest on the determination that a husband who procures a judgment on the basis of a separation agreement presented to the court for approval as not unconscionable and who at the same time withholds from the court knowledge of the single largest marital asset [the military pension]—commits a species of fraud.

The husband contends here that the court had neither legal nor equitable cause to vacate the original judgment which found the separation agreement not unconscionable and adjudged the disposition of the property according to its terms. The husband means by these contentions that the prior judgment entered some months before, and from which no appeal was taken, had since become final and was conclusive. Rule 75.01. The husband means also that, whether the proceeding to vacate that judgment was intended as a writ of error coram nobis or as an action in equity for fraud in the procurement—as alternatively proposed by the wife—the evidence was not sufficient to support the remedy awarded.

The common law allowed remedy to challenge the validity of a judgment already rendered by means which included the writ of error coram nobis and a proceeding in equity to vacate the judgment for fraud in the procurement. The remedy used was

determined by whether the challenge to the judgment invoked the law or equity jurisdiction of the court. *Simms v. Thompson*, 291 Mo. 493, 236 S.W. 876, 881 (Banc 1922); *J. R. Watkins Company v. Hubbard*, 343 S.W.2d 189, 191 (Mo.App.1961). The remedy by writ of error coram nobis engaged the law jurisdiction of a court to correct an error of fact upon which the judgment rested. The writ brought its own judgment before the court of rendition for examination of a matter of fact [but not of law] wrongly assumed in the adjudication and which, if known, would have prevented jurisdiction to enter the judgment. *Cross v. Gould*, 131 Mo.App. 585, 110 S.W. 672, 676 (1908). The remedy to vacate a judgment for fraud in the procurement engaged the equity jurisdiction of the court. The fraud which justified such relief, however, was a deception which prevented the presentation of a defense or proof, and because extraneous to the judgment, the practice at the common law required that such a proceeding be brought in equity by separate bill. *In re Beauchamp's Estate*, 184 S.W.2d 729 (Mo.App.1945).

■ The coalescence of the two traditional forms of action, law and equity, into the single form, the civil action, prompted a rule of law—of apparent logic—which used coram nobis by direct motion to the court of rendition as a means for the equity power to vacate the judgment procured by fraud.[1] Subsequent authority, however, restored the distinction between the common law function of coram nobis and the remedy by equity to avoid a judgment procured by fraud [*Simms v. Thompson*, 291 Mo. 493, 236 S.W. 876, 881 (Banc 1914); *Spotts v. Spotts*, 331 Mo. 942, 55 S.W.2d 984, 986[2, 3]

---

1. The rationale which prompted *Cross v. Gould*, 131 Mo.App. 585, 110 S.W. 672, l.c. 678 (1908) and even earlier courts [*Downing v. Still*, 43 Mo. 309—and see the splendid exposition of developed authority on this general subject in *J. R. Watkins Company v. Hubbard*, 343 S.W.2d 189, l.c. 192 et seq. (Mo.App.1961)] to employ a motion in the nature of coram nobis as a cumulative remedy with the traditional bill in equity to avoid a judgment for fraud, mis-

take or duress, rests on the recognition that the discard of separate procedures for law and equity cases [as by present Rule 42.01] was an advance in the administration of justice, and so to allow the vacation of judgment for fraud by simple motion—as done by coram nobis—promotes speedy dispositions of causes with the least cost and trouble to the suitors. See, especially, the dissent of Judge Lamm in *Jeude v. Sims*, 258 Mo. 26, 166 S.W. 1048, l.c. 1056 (Banc 1914).

(1932)] and that rule governs the contention here.[2]

The petition upon which the judgment before us rests alleges fraud in the procurement of the orders for disposition of the property. The judgment entered upon that petition recites fraud as the ground of adjudication. The pleadings and judgment call for an exercise of jurisdiction not compatible with the office of a writ of error coram nobis. *Schneider v. Schneider*, 273 S.W. 1081, 1083[2] (Mo.App.1925). The only question for determination, therefore, is simply whether the proof supports the equity of the wife to be relieved from the prior judgment because of the fraud of the husband.

The evidence is not in question: the husband was the beneficiary of a vested military pension for a twenty year service. This stipend of $500 per month had been paid him regularly for the five years which preceded the uncontested judgment and, according to the best evidence of the wife, had an actuarial value of $64,491 at the time of dissolution. Nor is there doubt that the separation agreement made no mention of the pension benefit, nor that the husband affirmed to the court in response to inquiry by counsel that the separation agreement made disposition of all the property, both marital and non-marital. The contentions the husband propounds on appeal are that the wife executed the separation agreement with awareness of the benefit and that it was not mentioned as an item of property in the agreement, and so his conduct was not fraudulent and, in all events, the pension was not a marital asset subject to the property judgment of a court under § 452.-330.

■ The Dissolution of Marriage Act imparts a power to the courts to order division of marital property which the former procedure withheld. An agreement on separation between the husband and wife as to

their property was valid under the former practice even without oversight by the court. *Reiner v. Miller*, 478 S.W.2d 283, 286[7] (Mo.1972). The present statutes, however, impose an inflexible duty on the court to make division of the marital property by order [§ 452.330.1; *Corder v. Corder*, 546 S.W.2d 798, 804[6] (Mo.App.1977)] or, where the parties propose a property agreement, to approve the disposition only after determination that the economic and relevant circumstances render the agreement not unconscionable. § 452.325. It is the clear purpose of the statute, therefore, that a valid adjudication of fairness shall precede the efficacy of a separation agreement.

■ Concealment of a material fact of a transaction, which a party has the duty to disclose, constitutes fraud as actual as by affirmative misrepresentation. *Beil v. Gaertner*, 355 Mo. 617, 197 S.W.2d 611, 616[4] (1946); *Denny v. Guyton*, 327 Mo. 1030, 40 S.W.2d 562, 590[27] (Banc 1931). A party who gives evidence is by the troth of his oath to speak the truth. *Bartlett v. Kansas City Public Service Company*, 349 Mo. 13, 160 S.W.2d 740, 742[3, 5] (1942). The husband withheld altogether mention in the separation agreement the knowledge he had of the pension benefit and disguised his testimony to the court of that fact material to the adjudication of fairness. The trial court found, and the evidence clearly supports, that the court of original rendition was misled into the pronouncement of a judgment which disclosure of the true facts would not have induced.

■ The husband acknowledges the power to equity to nullify a judgment procured by fraud, but contends that the misconduct must relate to the manner whereby the judgment was concocted, and not to the merits of the issues actually adjudicated. It is the rule that equity will not annul a

---

2. While coram nobis may not be used as a pleading in equity to set aside a judgment for fraud in the procurement, contemporary practice allows the equity action by direct motion as well as by the traditional independent proceeding. *J. R. Watkins Company v. Hubbard*, 343 S.W.2d 189, 195[3, 4] (Mo.App.1961).

judgment at law where the fraud was in the very issues decided by the judgment, but only where the deceit was extrinsic to the subject matter of the litigation—that is, where the fraud prevented the suitor from a trial or from the full presentation of his case. *Hemphill v. Hemphill*, 316 S.W.2d 582, 586[5–7] (Mo.1958); *Walther v. Null*, 233 Mo. 104, 134 S.W. 993, 995 (1911). The limitation of this remedy to extrinsic fraud does not describe an impotency of equity, but rather is imposed by the public policy that there must be an end to litigation. Pomeroy, Equity Jurisprudence, § 919b (5th ed. 1941). On this principle, a court of equity will not vacate a judgment merely to allow the defeated suitor another opportunity to assert the merits of a case [*Jones v. Arnold*, 359 Mo. 161, 221 S.W.2d 187, 192[9, 10] (1949)] or even for mere perjury, *unless accompanied by other collateral acts of fraud*. *Winchell v. Gaskill*, 354 Mo. 593, 190 S.W.2d 266, 271[3, 4] (1945); *Cantwell v. Johnson*, 236 Mo. 575, 139 S.W. 365, 373[6] (1911); Pomeroy, Equity Jurisprudence, § 919a (5th ed. 1941). Whether the sworn declaration of the husband before the court that the separation agreement made disposition of all marital and non-marital property constitutes a concealment, as found by the chancellor, or was an affirmative suppression of the truth, as would appear, does not determine our decision. There is no doubt that the fraud of the husband in that respect was on an issue actually litigated and not an act in the very procurement of the judgment and so, however untruthful the testimony, when considered alone does not invoke the equitable remedy. Our decision, rather, rests on the breach by the husband of the trust confided to him by the wife which induced her to forgo advice of counsel and so submit her rights of property for division without opportunity to assert that the pension was in law—under the facts—an asset of the marriage.

It has been the insistence of the husband throughout that the military pension, as a matter of law, was a personal asset not subject to division with the spouse. From all that appears, that conviction prompted the husband not to mention the pension in the separation agreement. That does not explain his response to the court, however, that the agreement made disposition of all the *marital and non-marital* property. One very purpose of § 452.330 that "the court shall set apart to each spouse his property and shall divide the marital property" is that the court determine—where there is dispute—what the law accords to both as property of the marriage and what the law sets apart to each as separate property. To that end, the procedures of § 452.330 postulate full disclosure by the husband and wife to the court of all the property held by either or both of them. The determination of interest and ownership under the Act is for the court as an incident of division by decree or adjudication of fairness of an agreed disposition. §§ 452.325 and 452.330.

The wife was prevented from a just consideration of her claim to the pension under circumstances of breach of faith as would make the court an instrument of injustice should that judgment be allowed effect. The relationship between husband and wife entails the highest trust and confidence and justifies their mutual reliance. *Linders v. Linders*, 356 Mo. 852, 204 S.W.2d 229, 232[4, 9] (1947); *Bitzenburg v. Bitzenburg*, 360 Mo. 70, 226 S.W.2d 1017, 1021[3, 4] (1950). The truth of this principle becomes evident from the admitted expectation of the husband that the wife, as she had throughout the marriage—would accept and rely on his representations that she had no need of a personal lawyer to advise her on the dissolution and separation agreement, because his counsel would look after her interests as well. And in fact the wife did rely on that representation. Although she appreciated the need for independent advice on these matters, and in fact consulted a lawyer separately on one occasion, she was discouraged from further recourse by the insistence and anger of the husband that the counsel he had chosen would serve them both. It was disclosure to him that she had seen a lawyer that prompted his indignant break of the scant reconciliation they had managed. Although the marriage was in the process of rupture,

it is clear that the dependency and reliance of the wife on the representations of the husband that his lawyer would benefit her arose out of the confidence and trust engendered by the marital relation. The chancellor found, quite properly, that the wife knew of the pension; but from what appears, she was not aware of her legal right to claim it as a marital asset. This she would have readily learned from independent advice. She was misled from that knowledge by the trumpery of the husband. The relationship of confidence between them justified the wife to rely on the representation of the husband that his counsel would act also for her benefit, and his breach of that confidence excuses her from any neglect to act for herself. *Winchell v. Gaskill*, 354 Mo. 593, 190 S.W.2d 266, 272[8] (1945); *Hockenberry v. Cooper County State Bank*, 338 Mo. 31, 88 S.W.2d 1031, 1037[5–8] (1935). A judgment which results from trickery and prevents an adversary from a defense or full response to the action is procured by fraud. *Fadler v. Gabbert*, 333 Mo. 851, 63 S.W.2d 121, 132[15] (1933). A judgment procured by fraud is regarded as perpetrated on the court as well as on the injured party. Pomeroy, Equity Jurisprudence, § 919a (5th ed. 1941). The chancellor properly annulled the judgment.

■ The claim by the husband to the military pension as his separate property is without merit. Section 452.330.3 treats "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation" presumptively as marital property. The military service which earned the pension emolument was virtually coterminous with the conjugal span—it began when they married and was fully earned before they separated. The husband attempts to avoid the plain statutory language by arguments that the wife expressly relinquished her right to claim the pension—a contention the evidence discredits—and that the record does not suffice to attribute value to the benefit. As to the latter, the pension was vested and payable as long as the husband should live, and the judgment which treats the pension ben-

efit—then $175 per month—as an asset of the marriage is soundly based. The military pension acquired subsequent to the marriage was a present interest, not subject to divestment, and falls within the marital property definition of the statute. *In re Marriage of Powers*, 527 S.W.2d 949, 957 (Mo.App.1975).

The husband cites a number of decisions which bear neither by analogy or as precedent. *Robbins v. Robbins*, 463 S.W.2d 876 (Mo.1971) determined that the value of a future pension benefit no part of which became vested until actual retirement was too speculative an interest to be considered a present asset for purposes of alimony judgment. *Ray v. Ray*, 336 S.W.2d 731 (Mo.App.1960) determined that retirement benefits which the wife "will or may draw at the end of her employment, whenever that may be" never became part of the common property. *Jaeger v. Jaeger*, 547 S.W.2d 207 (Mo.App.) was remanded for opportunity to make proof of the nature of pension plan and the interests of the spouses according to the criteria given in *Powers, supra*, and *Robbins, supra*. These cases, and those others cited by the parties, show that the determination that a pension or profit-sharing plan is a marital asset rests on proof that the right to receive the benefit was earned during the marriage and is not contingent nor subject to divestment.

■ The wife contends on her separate appeal that the court neither made just division of the marital property nor determined the issue of maintenance in accordance with the statutory factors, §§ 452.330 and 452.335. In more exact terms, she contends that the military pension was inequitably apportioned. We conclude, rather, that the order which adjudges the wife $175 "partially as a division of [the husband's] vested retirement pay . . . and partially as periodic maintenance" does not express a division of property. The award adjudges but does not separate the two disparate property interests accorded the wife in the pension benefit. Statutory maintenance is for support, is conditioned

on circumstances and may be modified [§§ 452.335 and 452.370]; the allocation of marital property redresses, on relevant considerations, the contribution of each spouse to the marriage and vests ownership, § 452.330. The judgment as to the pension asset does not *divide* the marital property as required by § 452.330 and so does not present a subject for review. .*Corder v. Corder*, 546 S.W.2d 798, 804[6] (Mo.App.1977).

The cause is remanded for the entry of a definite and certain disposition of the pension fund asset. In this disposition the trial court will heed the prescription of § 452.335.1 which conditions the award of maintenance on the consideration that the spouse favored with such allowance "[l]acks sufficient property, including marital property apportioned to [her], to provide for [h]er reasonable needs." The trial court will consider also that the pension benefit, by its terms, varies according to the cost of living and that such adjustable asset is most aptly allocable on a percentile basis. The award on this asset shall accrue as of December 1, 1976, the date of the trial court judgment.

The cause is remanded according to these directions and is in all other respects affirmed.

All concur.