The **AURORA BANK, a Missouri Corporation, Plaintiff–Appellant,**

v.

**Lewis R. HAMLIN and Nell R. Hamlin, Defendants–Respondents.**

No. 11641.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 10, 1980.

William A. Ratican, Jr., Aurora, Joe R. Ellis, Cassville, for plaintiff--appellant.

Michael D. Garrett, Garrett & Woods, Monett, for defendants--respondents.

PREWITT, Judge.

The Aurora Bank brought suit against defendants on two promissory notes. The trial judge, hearing the matter without a jury, entered judgment against defendant Lewis R. Hamlin, on both notes but found in favor of his wife, defendant Nell R. Hamlin, on two separate grounds including that her signing of the notes "was brought about by threats and coercion of plaintiff's employee."

In November 1975, the date was not remembered by the witnesses, Mrs. Hamlin returned home after work and when she arrived, a loan officer of the bank was there talking to Mr. Hamlin about several unpaid loans owed to the bank by Mr. Hamlin. Mrs. Hamlin had been unaware of the loans and only Mr. Hamlin had signed notes evidencing them. The bank's board of directors had asked the loan officer to have defendants sign a deed of trust on the farm where they lived to secure the payment of the debts because the directors felt that the bank was inadequately secured. The defendants apparently owned the farm as tenants by the entireties. When the loan officer was unable to convince Mrs. Hamlin to sign two renewal notes consolidating the loans and the deed of trust, he called the bank's president, who then came to the Hamlin's house. Mrs. Hamlin said that the loan officer told her she was responsible for her husband's debts "because I was married to Lew" and that the bank would "foreclose" on the farm "if I didn't sign the notes." She "took his word" that this was the law in Missouri. She said she was told "if I didn't sign these papers he had no alternative but to go after our land, our home" and that it would be "an accommodation to the bank" if she signed them "to clear the bank records." She testified that she believed the loan officer and did not

learn that she was not then liable for the debts until after this suit was filed and she talked to a lawyer in July of 1978. Until that time she thought, because of the loan officer's statements, that she was liable because she was married to Mr. Hamlin. She did not agree to sign the notes that night; she "wanted to think about it."

Mrs. Hamlin did not sign the deed of trust but signed the notes at the bank on a Saturday morning two or three days later. Mr. Hamlin signed the notes the day before. Mrs. Hamlin was off work on Saturdays and the bank was open on Saturday mornings. November 26, 1975, the date of the notes, was a Wednesday. No additional funds were disbursed upon the signing of the notes. Mr. Hamlin testified to essentially the same facts as his wife about the discussions at their home. The bank officers denied that any statements were made to her regarding her liability for Mr. Hamlin's debts and said that they knew that they had no legal recourse against Mrs. Hamlin before she signed the notes. The loan officer recalls the bank president telling Mrs. Hamlin, "We would appreciate it if you would sign the notes for us as an accommodation to the bank."

Plaintiff contends that the trial court erred in finding that Mrs. Hamlin's signing of the notes was brought about by threats and coercion by bank employees because: A. "The defense of threats and coercion . . . is actually a defense of duress and an agreement procured by duress is not void but voidable and Mrs. Hamlin made no attempt to avoid the agreement until suit was brought"; B. there was no evidence that Mrs. Hamlin "was bereft of the free exercise of her will power"; C. Mrs. Hamlin had "full knowledge of the facts of the situation and ample time and opportunity for full and free investigation, deliberation and reflection"; and D. the duress was removed after the bank officials left the Hamlin home that night and Mrs Hamlin's failure "to assert duress . . . with reasonable diligence after the duress is removed . . . amounts to waiver or ratification."

■ Duress can avoid a contract if the contract was obtained by threats of the person claiming the benefit of it which caused the victim "to be bereft of the quality of mind essential to the making of a contract." *G___ R___ E___ v. M___ M___ E___*, 531 S.W.2d 772, 773 (Mo.App. 1975); see also *Hess v. Bennett*, 554 S.W.2d 503, 506 (Mo.App.1977) and *Wilson v. Wilson*, 354 S.W.2d 532, 545 (Mo.App.1962). Duress is to be tested, not by the nature of the threats, but by the state of mind induced thereby in the victim. *Ensign v. Home For the Jewish Aged*, 274 S.W.2d 502, 506 (Mo.App.1955). The ultimate fact in issue is whether the victim was bereft of the free exercise of his will power; "and of which, the means used to produce such state of mind, the age, sex, capacity, situation, and relation of the parties, are all evidentiary." Id.

■ There was evidence of a threat to sue Mrs. Hamlin along with her husband and then to levy on defendants' farm. The bank officers, while denying they made such a statement, acknowledged that when they went to the Hamlin residence the bank had no basis for bringing a suit against Mrs. Hamlin nor any basis to levy upon the farm. Threats to take legal action with knowledge of the falsity of the claim can amount to duress. *Leeper v. Beltrami*, 53 Cal.2d 195, 1 Cal.Rptr. 12, 18–19, 347 P.2d 12, 18–19, 77 A.L.R.2d 803, 812 (1959); *Spillers v. Five Points Guaranty Bank*, 335 So.2d 851, 852–853 (Fla.App.1976); 25 Am.Jur.2d Duress and Undue Influence § 18; 17 C.J.S. Contracts § 175, p. 962. See also *Shurtleff v. Giller*, 527 S.W.2d 214, 216 (Tex.Civ.App. 1975). A claim of duress cannot generally be sustained where there is knowledge of the facts and opportunity for investigation, deliberation and reflection. *Weisert v. Bramman*, 358 Mo. 636, 216 S.W.2d 430, 434 (1948). *Ensign v. Home For the Jewish Aged*, supra, 274 S.W.2d at 508. We cannot say as a matter of law that Mrs. Hamlin had "knowledge of the facts". There was evidence she thought that the bank would sue her and could have the farm sold. Moreover, the length of time that elapses between the threat and the transaction at-

tacked is important only in determining if the threat precluded free judgment at the time of the transaction. Restatement of Contracts § 492, Comment c (1932). Fear of threats may continue long after the threats and in determining if it does, time, distance, opportunity to obtain disinterested advice and protection, are all important. Id. See also 25 Am.Jur.2d Duress and Undue Influence, § 13, p. 370; 17 C.J.S. Contracts § 168, p. 949.

We find no authority discussing if the failure to seek other advice in such a situation prevents a claim of duress. In an action for fraud one can rely on a statement of law "where one party is possessed or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance of the law". *Fredrick v. Bensen Aircraft Corporation*, 436 S.W.2d 765, 770 (Mo.App.1968); *Hartley Realty Company v. Casady*, 332 S.W.2d 291, 293–295 (Mo.App.1960). Bank officials would appear to have more knowledge of the law relating to notes and loans than the average person and the statements here would be a claim that the officials possessed knowledge of the law superior to Mrs. Hamlin. Where a wife claimed she signed notes for her husband's debts because of misrepresentations of law by a bank's attorney, the Missouri Supreme Court stated that a claim of duress could be based on the facts alleged but ruled the case upon the basis of fraud. *Security Sav. Bank v. Kellems*, 321 Mo. 1, 9 S.W.2d 967 (1928). It has been held in fraud that whether the victim should have made inquiries to check on a statement of law is a factual matter for the trier of fact. See *Dettler v. Santa Cruz*, 403 S.W.2d 651, 655–656 (Mo.App.1966). Mrs. Hamlin's duty to verify the statements should be no greater in duress than in fraud, and we believe that her failure to do so does not bar her claim of duress as a matter of law.

The Hamlins and the bank officers testified that Mrs. Hamlin was very upset and cried during the discussions at the Hamlin residence. She was described by the loan officer as a "mild mannered person", and not "strong willed". The trial court, after hearing the evidence and observing her, found that Mrs. Hamlin's "will could have been easily overcome by other persons and particularly, in this instance, by anyone in a position of authority." She refused to sign the notes when first asked but testified she signed them after the threats to sue her and to sell the farm because they convinced her that she was liable and she didn't want to lose the farm. We believe that there was sufficient evidence for the trial court to find that duress was present when Mrs. Hamlin signed the notes.

On the facts here the trial court could find that there was no waiver of the defense of duress or ratification of the notes after the duress was removed. The victim of duress may continue, even after a cause of action has accrued to him, to be submissive to the force or threatened force which had theretofore caused him to act. *Coleman v. Crescent Insulated Wire & Cable Co.*, 350 Mo. 781, 168 S.W.2d 1060, 1065 (1943). In *Coleman* an action, claiming duress, brought almost ten years after notes were signed was held timely. There was evidence that Mrs. Hamlin was misled and believed that the threats to sue her and take the farm could be carried out and that she had no defense to the threatened action either before or after she signed the notes sued on here. As long as she so believed, she could have been under duress. Conduct in apparent recognition of a contract while duress continues does not constitute ratification. *Motor Equipment Co. v. McLaughlin*, 156 Kan. 258, 133 P.2d 149, 156 (1943); 25 Am.Jur.2d, Duress and Undue Influence, § 29, p. 388.

The judgment is affirmed.

TITUS, P. J., FLANIGAN and GREENE, JJ., concur.

MAUS, J., recused.