In re the MARRIAGE OF Jeffrey Huff HARRISON and Sally Ann Harrison.

Jeffrey Huff HARRISON, Respondent,

v.

Sally Ann HARRISON, Appellant.

No. 14873.

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 1987.

Robert C. Fields, Lois M. Zerrer, Springfield, for appellant.

James D. Tucker, William C. Love, Harrison, Tucker & Geisler, Springfield, for respondent.

PER CURIAM.

Sally Ann Harrison ("Sally") appeals from an order dismissing with prejudice her amended counterclaim wherein she prayed the trial court to vacate and set aside certain provisions of a decree dissolving her marriage to Jeffrey Huff Harrison ("Jeff"). The issues submitted for our determination require a recapitulation of the litigation between the parties.

On July 8, 1982, Sally and Jeff, accompanied by their respective attorneys, appeared in the trial court for a hearing on Jeff's petition to dissolve their marriage of almost 17 years. A 19–page document captioned "Separation and Marital Settlement Agreement," bearing the signatures of both parties, was offered in evidence by Jeff, and received by the trial court without objection by Sally.

Jeff's testimony showed, among other things, that he is a practicing attorney.

The agreement, henceforth referred to as "the separation agreement," provided for division of the marital property by listing, in separate schedules, the items thereof to be awarded to each party. Jeff's schedule included:

"All rights, title and interest in the law firm of Harrison, Tucker & Dorr."

No value was assigned to that item.

The separation agreement also contained, among other things, provisions for maintenance for Sally, and for custody, visitation and support of the parties' two unemancipated children.

Sally's testimony at the hearing included this:

"Q Is it also correct, as your husband has testified, that both you and he have negotiated a separation and property settlement agreement between your lawyers?

A Yes.

Q And, do you understand this separation agreement and property settlement contract to cover all marital and non-marital property owned by the two of you?

A I do. (Nods head.)

Q Do you believe that it is a fair division and distribution of this property?

A Yes.

Q And, do you also feel it's fair with respect to maintenance and child support?

A Yes.

Q Do you want the Court to approve this agreement?

A Yes.

. . . .

Q ... Mrs. Harrison, with regard to this separation and marital settlement agreement, on page three of Schedule B the interest, title, and rights of the law firm of Harrison, Tucker, & Dorr are awarded to your husband. Do you understand that?

A I do.

Q And, you understand that whatever interests he's accumulated in that is marital property?

A Yes.

Q And, you know that the value of that is somewhat difficult, if not impossible, to determine?

A I understand.

Q And, you have, I believe, examined the most recent records on the law firm prepared by Mr. Samek, with your husband? Did you review a balance sheet?

A Yes.

Q And, it's with that information that you're freely deciding to let him have his interest in the law firm, without any claim to that in the future. Is that correct?

A Yes."

At the conclusion of the hearing, the trial court made findings including the following: "Separation agreement filed, and the Court, finding it to be fair, reasonable, and not unconscionable, approves same, and it is hereby incorporated into and made a part of the decree." The trial court thereupon entered a decree of dissolution of marriage containing this provision: "Separation Agreement to be incorporated in and made part of decree."

On April 4, 1983, fewer than 9 months after entry of the decree, Jeff filed a motion to modify the provisions thereof pertaining to child custody and support.

Sally responded with a four-count "counterclaim." Count I thereof prayed the court "to determine that the [separation] agreement ... is not a valid agreement and the decree ... is not a final decree, and to set aside said decree and divide the property of the parties as the Court deems fair and just and to award [Sally] such maintenance and attorney fees as the Court deems proper." Count II prayed for essentially the same relief. Count III pertained to child support; Count IV pertained to the children's medical expenses. We are not, on this appeal, concerned with Counts III and IV, as they, along with Jeff's motion to modify, were resolved by stipulation of the parties.

On July 18, 1984, the trial court, pursuant to the stipulation mentioned in the preceding paragraph, entered an order modifying the child support, custody and visitation provisions of the dissolution decree. Pertinent to the instant dispute, the order provided: "This Order has no effect upon Counts I and II of [Sally's] ... Counterclaim...."

The next relevant activity occurred more than 19 months later, when Sally, on March 3, 1986, filed an "Amended Counterclaim." The copy thereof furnished us in the legal file, Rule 81.12(a),[1] contains two counts

---

1. Rule references are to Missouri Rules of Civil Procedure (17th ed. 1986).

designated, respectively, Count I and Count II.

Jeff responded to Sally's amended counterclaim by filing a motion praying the trial court to dismiss both counts with prejudice "for failure to state a claim upon which relief can be granted."

In an "Order of Dismissal," filed July 11, 1986, the trial court ruled:

"[A]fter considering all of the pleadings, Amendments, Suggestions, prior argument, transcripts and the Court record, this Court finds that [Sally's] Amended Counterclaim, based upon existing Missouri law, fails to state a cause of action cognizable at law or equity to set aside the Settlement Agreement or modify the Dissolution Decree and fails to plead the elements necessary for any other legal or equitable relief.

WHEREFORE, IT IS ORDERED that [Sally's] Amended Counterclaim should be and is hereby dismissed with prejudice, and the costs to be taxed equally against [Jeff] and [Sally]."

This appeal followed.

■ Sally's brief reads as if her amended counterclaim contained only one count. The allegations referred to in her brief are exclusively those of Count I, and the relief she seeks from us is a mandate remanding the cause for trial on the issues raised by Count I. Nowhere in Sally's brief does she mention the allegations of, or the relief sought in, Count II, nor does she charge the trial court with error in dismissing that count. We therefore hold that Sally has abandoned any issue she might have raised as to the dismissal of Count II. *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 426[1] (Mo.1968); *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405[3] (Mo. 1964). Accordingly, we henceforth confine our attention to Count I.

Summarizing the discursive averments of Count I is a vexing task; nonetheless, we have undertaken it in an effort to hold this opinion to conscionable length.

Capsulized, Count I alleges that Sally was not "apprised" of the value of Jeff's law firm before signing the separation agreement; no discovery as to value was done on her behalf; prior to entry of the dissolution decree, Jeff told Sally she was entitled to no portion of the law firm, and if she "____ed" with it, he would "drag the divorce out forever and it would cost every last penny she had"; within a week prior to entry of the dissolution decree, Jeff threatened Sally that if she hired certain attorneys of which he did not approve, or if she failed to go through with the dissolution according to the separation agreement, he would drag the dissolution out as averred in the preceding clause; while the dissolution proceeding was pending, Jeff refused to move from the marital home, telling Sally no court would order a man out of his house; during the same interval Jeff took from Sally all credit cards and checks, leaving her no funds to move from the marital home with the parties' children; prior to entry of the dissolution decree, Jeff "brutally hounded" Sally for hours at a time, sometimes not allowing her to sleep at night and telling her what she must agree to regarding the dissolution; Jeff told Sally prior to entry of the dissolution decree that unless she transferred title to certain apartments referred to in the decree, he would make her pay half the mortgage each time it was due, together with other expenses; Jeff told Sally that as an attorney, he knew how judges react and what courts would allow in dissolutions, thus she had no other choice than to sign the separation agreement; prior to entry of the dissolution decree, Jeff "physically abused" Sally, causing her to be "cut and bruised," necessitating treatment by dentists and doctors; Jeff informed Sally that one of Jeff's partners would be in a position to draft all papers and handle all legal work on behalf of Jeff and Sally, and it was unnecessary for Sally to confer with another attorney; when Sally told Jeff she wished to have her own attorney, Jeff threatened Sally as heretofore alleged; no negotiations occurred between Jeff's attorney and the attorney ultimately hired by Sally; the separation agreement was the same as prepared by Jeff's attorney; no appraisals of any property were done prior to entry of the dissolution decree or, if

appraisals were done, they were not made available to Sally; the values stated in the dissolution decree were incorrect, and known to be so by Jeff; Sally did not understand which assets should be considered by the court in dividing the marital property, and was unaware of their value due to misrepresentations, fraud, duress and coercion by Jeff; Sally did not understand she was entitled to temporary support and maintenance; Sally did not believe her retained attorney could or would advise or represent her because he was approved by Jeff; Jeff concealed certificates of deposit from Sally; Jeff's attorney misled the trial court and Sally by stating the value of Jeff's law firm is difficult, if not impossible, to determine; Sally did not challenge that proclamation due to threats, coercion and misrepresentations of Jeff; the dissolution decree was procured by overreaching, fraud, misrepresentation, duress and coercion by Jeff, who was in a superior position of knowledge, being a licensed attorney; Sally was ignorant of the truth, or was overcome by Jeff's overreaching and coercion.

Count I prays that the trial court "set aside, vacate and declare null and void the [dissolution decree] except that part ... which orders the marriage dissolved ... or so much of the Decree as this court should determine just and to re-open the case for additional evidence on the grounds of fraud and coercion in the procurement of the Decree."

■ Before addressing the contentions in Sally's brief, we note that although Jeff's motion to dismiss averred that Sally's amended counterclaim failed to state a claim upon which relief can be granted, the trial court, according to the order of dismissal, considered, among other things, affidavits and transcripts.[2] Under Rule 55.27(a), when matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss a pleading for failure to state a claim upon which relief can be granted is to be treated as one for summary judgment, and disposed of as provided in

Rule 74.04. *Black Leaf Products Co. v. Chemsico, Inc.*, 678 S.W.2d 827, 829[1] (Mo.App.1984). In reviewing the rendition of a summary judgment, the appellate court must scrutinize the record in the light most favorable to the party against whom summary judgment was rendered, and resolve all doubts in favor of that party. *Id.* at 829[3]; *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 26–27[1] (Mo.App.1978). The burden is on the moving party to demonstrate by unassailable proof that there is no genuine issue of material fact, and that such party is entitled to judgment as a matter of law. Rule 74.04(h); *Black Leaf Products Co.*, 678 S.W.2d at 829[4]; *Cooper v. Yellow Freight System, Inc.*, 589 S.W.2d 643, 645[2] (Mo.App.1979).

Obviously, however, if Count I of Sally's amended counterclaim fails to state a claim on which relief can be granted, the trial court was correct in ordering it dismissed with prejudice, irrespective of whether the order be treated as a dismissal for failure to state a claim on which relief can be granted, or as a summary judgment in favor of Jeff. Our first inquiry, therefore, is whether Count I states a claim upon which relief can be granted. In deciding that issue, we allow Count I its broadest intendment, treat all facts alleged as true, construe the allegations favorably to Sally, and determine whether the averments invoke principles of substantive law. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312[1] (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). Sally has a right to proceed on Count I if the facts pleaded therein, and their reasonable inferences, looked at most favorably from her standpoint, show any ground upon which relief can be granted. *Hohenstreet v. Sterling National Land Co.*, 706 S.W.2d 80, 83[2] (Mo.App.1986); *Euge v. Golden*, 551 S.W.2d 928, 931[4] (Mo.App.1977).

*Jones v. Jones*, 254 S.W.2d 260, 261 (Mo. App.1953), states:

"It is well established that equity has jurisdiction to grant relief against a judg-

---

**2.** The only transcript supplied us is the 14–page transcript of the hearing in the trial court July 8, 1982, the date the decree of dissolution was entered.

ment upon the ground of fraud in its procurement so long as the complaining party is able to show that he himself was free from fault, neglect, or inattention to his case. But for the fraud to have existed in the procurement of the judgment, it must have related, not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. In other words, the fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered. In short, it is not the province of this feature of equitable jurisdiction to afford the losing party a retrial of matters either tried or concluded by the original proceeding, but instead relief is limited to those instances where the fraud was of such a character as to have forestalled an opportunity for the fair submission of the controversy. Of such is the situation where the losing party to an action had a meritorious defense to interpose, but was prevented, without fault on his own part, from setting up his defense by reason of the fraud, deceit, or artifice of the successful party. In such an instance the fraud is to be regarded as having been perpetrated, not only upon the losing party, but upon the court as well, and if and when established constitutes a proper ground for equitable relief against the judgment."

*Accord: Godsy v. Godsy,* 565 S.W.2d 726, 733–34[13, 14] (Mo.App.1978), *appeal dismissed,* 439 U.S. 960, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978).

■ Fraud extrinsic to the judgment is shown when proof of facts is made which if known to the trial court would have caused the trial court to *not* enter the judgment; facts which would have caused the court to enter a *different* judgment do not constitute fraud extrinsic to the judgment. *Gehm v. Gehm,* 707 S.W.2d 491, 494[2, 3] (Mo.App.1986).

In our view, the two cases with facts closest to those alleged in Count I of Sally's amended counterclaim are *Daffin v. Daffin,* 567 S.W.2d 672 (Mo.App.1978), and *In re Marriage of Bartlett,* 664 S.W.2d 655 (Mo.App.1984).

In *Daffin,* after 24 years of marriage, the husband began urging a dissolution on the wife. When she resisted, he persisted and she became distraught, requiring a physician's care. The physician found her in stress, and opined she could not have effectively negotiated a settlement of her marital rights. The husband filed a petition for dissolution, and the following day took the wife to his lawyer's office to sign a separation agreement, telling her the lawyer represented both of them and would look after her interests. The husband expected the wife to rely on that assertion, as she had relied on everything else he had said during the marriage. The wife, upset and tearful, signed the agreement after feigning examination of it. Simultaneously, she signed a waiver of service and consent to trial without further notice. While the action was pending, the husband suggested a reconciliation, returned home, and resumed intimacy with the wife. Two days later he left again in anger. The wife assumed that because of resumption of marital relations, the dissolution hearing would be rescheduled on further notice. However, it was heard soon thereafter, without her knowledge or presence. The husband appeared and gave evidence, but made no mention that he received a military pension. The court approved the separation agreement—which had no provision regarding the pension—and found it was determinative of all property interests owned or claimed by the parties. Several months thereafter, the ex-wife brought an action to set aside the decree, except as to the dissolution of the marriage, on the ground that the judgment was procured by fraud practiced upon her and upon the court. She contended her actions were overborne by the husband, who dominated her to such extent that she was forced to rely on his advice to waive her right to contest the case and have the court divide the marital property.

The husband contended that his concealment of the military pension from the trial court was merely fraud intrinsic to the judgment, as it related only to an issue resolved by the judgment (the division of marital property), and did not relate to the manner whereby the judgment was obtained. The appellate court explained that while the husband's fraud in concealing the pension from the trial court was intrinsic, as it affected an issue actually litigated, the husband was also guilty of extrinsic fraud in the procurement of the judgment, in that he induced his wife to forgo advice of counsel, and to submit her property rights for determination without an opportunity to claim an interest in the pension. 567 S.W.2d at 677–78. The opinion noted that the husband admitted he expected his wife, as she had throughout the marriage, to accept and rely on his representation that she had no need of her own lawyer, as his counsel would look after her interests. The wife was discouraged from independent legal representation by the insistence and anger of the husband, and was therefore not informed of her right to claim the pension as a marital asset. The opinion added that the relationship of confidence between the husband and the wife justified the latter in relying on the husband's representation that his counsel would act for the wife's benefit, and the husband's breach of that confidence excused the wife from any neglect to act for herself. *Id.* at 679. The opinion concluded:

> "A judgment which results from trickery and prevents an adversary from a defense or full response to the action is procured by fraud. [citation omitted] A judgment procured by fraud is regarded as perpetrated on the court as well as on the injured party." *Id.*

The trial court's order in *Daffin* setting aside that portion of the dissolution decree dividing the marital property was upheld.

In *Bartlett,* the husband left his wife and their children in New Mexico, came to Missouri, and filed a petition to dissolve the marriage. While the action was pending, he showed up one night at the wife's residence in New Mexico with a separation agreement, telling the wife if she did not sign it he would seek custody of the children. The agreement included provisions for child support, maintenance in gross, and apportionment of liability on a note to the wife's mother. The wife signed the agreement; five days later the husband obtained a decree of dissolution incorporating the agreement. The ex-wife subsequently filed a motion to set aside the agreement and that portion of the decree incorporating it, alleging the agreement was obtained by fraud.[3] The trial court granted relief. On appeal by the ex-husband, the appellate court noted he conceded that when the agreement was signed, he could not make the payments it required of him, and he did not comply with its terms. The opinion, citing *Jones,* 254 S.W.2d 260, stated that actions in equity to set aside judgments procured by fraud have received court approval for many years. Additionally, the opinion, citing *Daffin,* 567 S.W.2d 672, noted that the doctrine had been applied in dissolution actions where a husband, by misrepresentations or coercion, has caused the wife to enter into an inequitable property settlement or prevented her from contesting his claim as to what is a fair settlement. *Bartlett,* 664 S.W.2d at 657. The court in *Bartlett* concluded that the husband's conduct demonstrated fraud in procurement of the separation agreement and the judgment, and that the relief granted by the trial court was proper. *Id.*

Sally maintains that Count I of her amended counterclaim states a cause of action to set aside the separation agreement, together with that portion of the dissolution decree incorporating it. Specifically, says Sally, Count I pleads that the decree was obtained by extrinsic fraud perpetrated by Jeff, in that it avers he compelled her to sign the separation agreement by (1) threatening to "drag out" the dissolution proceeding, (2) abusing her physically and mentally, and (3) telling her

---

**3.** Use of a motion, rather than a separate equitable proceeding, as the procedural vehicle to seek vacation of a judgment on the ground of extrinsic fraud has been approved in *Gehm,* 707 S.W.2d at 494, and S——— v. S———, 490 S.W.2d 344, 350[3] (Mo.App.1973).

that he, as an attorney, knew how judges ruled in dissolution cases, so she had no choice except to sign the agreement.

Jeff responds that every issue raised by Count I was considered by the trial court when it entered the dissolution decree, therefore any alleged misconduct by Jeff was "intrinsic to the decree." Jeff adds that the trial court had a duty under § 452.325.2, RSMo 1978, to examine the separation agreement, hear evidence regarding it, and determine whether it was conscionable. Consequently, says Jeff, the trial court, in approving the separation agreement, resolved all issues raised in Count I.

■ In our opinion, Count I, given its broadest intendment and construed favorably to Sally, alleges sufficient facts to plead a cause of action for setting aside the separation agreement, together with that segment of the dissolution decree incorporating it, on the ground of fraud extrinsic to the judgment.

Boiled down, Count I alleges that Sally signed the separation agreement, and capitulated at the hearing in the trial court, because of the cumulative effect of (a) Jeff's threats to drag out the dissolution proceeding unless Sally acquiesced in his demands, (b) Jeff's mental and physical abuse of Sally, (c) economic pressure applied by Jeff in refusing to vacate the marital home and denying Sally the funds for her to do so, (d) Jeff's representations as to how the judge would rule, and (e) Sally's anxiety that because Jeff had approved her attorney, the latter would not protect her interest.

Whether Sally can convince a fact finder that her allegations are true is, of course, a matter on which we need not speculate. All we decide is that Count I of Sally's amended counterclaim pleads facts sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted. The conduct attributed to Jeff in Count I is at least as egregious as that of the husbands in *Daffin* and *Bartlett.*

■ We reject Jeff's contention that his alleged misconduct was intrinsic to the judgment. We have learned from *Gehm,* 707 S.W.2d at 494[2, 3], that fraud extrinsic to a judgment is shown when proof is made of facts which, if known to the trial court, would have caused it to not enter the judgment. Here, if Sally indeed signed the separation agreement involuntarily, and if her testimony at the hearing, quoted *supra,* was given under duress, such facts, if known to the trial court, would—or should—have caused it to not enter the dissolution decree.

We recognize, of course, that the trial court found, from the testimony presented to it, that the separation agreement was fair, reasonable and not unconscionable. We point out to Jeff, however, that the issue Sally raises in Count I, i.e., that she signed the separation agreement under compulsion, was not litigated at the hearing July 8, 1982. We therefore reject Jeff's argument that the issues raised by Count I were judicially resolved on that occasion. Allowing Sally a chance to prove, if she can, the allegations of Count I does not grant her an opportunity to re-litigate issues heretofore tried.

Another argument advanced by Jeff is that the allegations of Count I are refuted by Sally's testimony of July 8, 1982. It is manifest, of course, that Sally's testimony, quoted *supra,* flatly contradicts the allegations of Count I.

■ We are not, however, concerned here with whether Sally's testimony was true. The issue for our determination is whether Count I pleads a cause of action, and we have concluded that it does. Additionally, we note that the record on appeal contains an affidavit by Sally dated December 6, 1985, wherein she states, among other things, that her attorney had not prepared her for the hearing on July 8, 1982, that she has no memory of reviewing any balance sheets regarding Jeff's law firm, that the separation agreement was not fairly reached after "arm's length negotiations," and that she was frightened, nervous and completely unable to think and give truthful answers at the hearing. This

affidavit, coupled with Count I, amply demonstrates that an issue exists as to whether Sally entered into the separation agreement because of threats by Jeff which caused Sally to be bereft of the quality of mind essential to the making of a contract. *Aurora Bank v. Hamlin*, 609 S.W.2d 486, 488[1] ((Mo.App.1980). In that regard, we observe that duress is to be tested not by the nature of the threats, but by the state of mind induced thereby in the victim, and that the ultimate issue regarding avoidance of a contract allegedly executed because of duress is whether the victim was bereft of the free exercise of her willpower. *Id.* at 488[2, 3].

■ A further argument advanced by Jeff is that Sally did not rely on his alleged representations, as she had her own attorney. Moreover, says Jeff, Sally had no right to rely on his alleged representations, as no confidential relationship existed between them at the time the representations were allegedly made.

Those contentions, in our view, are issues to be resolved by trial. Whether Sally in fact relied on any of Jeff's alleged representations is obviously a question of fact, and whether she was *entitled* to rely on any of Jeff's alleged representations is a question to be determined on the evidence presented to the fact finder. We cannot say that the allegations of Count I establish as a matter of law that Sally had no right to rely on any alleged representation by Jeff.

■ Finally, Jeff contends that Sally is seeking to have the trial court *change* the provisions of the dissolution decree regarding division of the marital property, a judicial action barred by *Gehm*, 707 S.W.2d 491.

Jeff misreads *Gehm*. There the trial court, in response to a motion by the ex-wife, changed the provisions of a dissolution decree dividing marital property, and, in addition, undertook to divide marital property omitted from the decree. The appellate court held the ex-wife had failed to plead or prove extrinsic fraud by the ex-husband in procuring the judgment, hence the trial court had no authority to set aside the decree, or any portion thereof. *Id.* at 494. The court added that the ex-wife's remedy regarding the omitted property was to bring a separate suit in equity to determine the nature of the property and its proper allocation. *Id.* at 495[9].

In the instant case, Sally, as we understand her, seeks an order from the trial court setting aside the separation agreement and that portion of the dissolution decree incorporating it, and, after presentation of further evidence to the trial court, a new division by the trial court of all marital property. We have held that Count I pleads a cause of action for such relief, and what we have said demonstrates that there are genuine issues of material fact in regard to Count I; consequently, Jeff has failed to establish that he is entitled to summary judgment in his favor on that count as a matter of law.

That portion of the trial court's order of July 11, 1986, dismissing Count II of Sally's amended counterclaim with prejudice is affirmed. That portion of said order dismissing Count I of Sally's amended counterclaim with prejudice is reversed, and the cause is remanded for further proceedings as to Count I only. The trial court should first determine, after an evidentiary hearing, whether Sally has proved extrinsic fraud by Jeff in procuring the decree of July 8, 1982. If the trial court finds that issue in favor of Sally, the trial court shall set aside the separation agreement and that portion of the dissolution decree incorporating it, and shall then proceed to divide the marital property anew, hearing such relevant and competent evidence as the parties choose to present on that issue. If the trial court finds that Sally has failed to prove extrinsic fraud by Jeff in procuring the dissolution decree, the trial court shall forthwith deny relief on Count I.

Costs of this appeal are taxed half against Sally and half against Jeff.