Joyce E. (Kays) CURTIS, Appellant,

v.

Kenneth M. KAYS, Respondent.

No. WD 33931.

Missouri Court of Appeals,
Western District.

March 20, 1984.

See also Mo.App., 648 S.W.2d 901.

Anne W. Elsberry, Hunter, Chamier, Lee, Elsberry & Brown, Moberly, for appellant.

Cynthia A. Suter, Moberly, for respondent.

Before CLARK, P.J., LOWENSTEIN, J. and DOWD, Special Judge.

CLARK, Presiding Judge.

Joyce E. (Kays) Curtis, the divorced spouse of Kenneth M. Kays, brought suit in equity to set aside a marriage dissolution separation contract on the ground of fraud perpetrated by her then husband in the procurement of the agreement. The trial court found the issues in favor of the husband and the wife appeals. Reversed.

The source of this suit is directly attributable to a marriage separation agreement which listed no values for any of the property set off to the spouses and a hearing in which the trial court approved the agreement as not unconscionable without any evidence of value and the economics of the property division. The case graphically portrays the potential for added expense and litigation when the mandate of § 452.-330.1(2), RSMo 1978 is ignored by the trial court and counsel.

The petition for dissolution of the Kays' marriage was filed in May, 1978. After negotiations directly conducted by the spouses themselves and by the attorneys for each, a separation agreement was for-malized August 25, 1978. In the division of marital assets, the major items set off to the wife under the agreement were the family home, household goods and an automobile. The husband received his interest in his professional corporation, Radiology, Inc., pension and profit sharing plans and an automobile. The agreement neither mentioned nor assigned any values to the assets described in the agreement.

Only the husband attended the hearing on the dissolution case at which the wife appeared by her attorney. There was no evidence presented to the court as to the value of any marital asset. By its decree, the court ordered the marriage dissolved and approved the separation agreement as not unconscionable. The decree matured to finality and the marital assets were divided in accordance with the separation agreement. Some two years after entry of the decree, the wife obtained information indicative of substantial undervaluation of assets set over to the husband under the agreement and this suit followed.

The wife's claim of fraud focuses on the values of the husband's interest in the professional corporation and the profit sharing plan associated with his participation in that business. The wife contended that the values were misrepresented to her and her attorney. The value details developed on trial of this case were factually uncontested although application of the facts to the ultimate question in the case was disputed.

The husband is a practicing physician who owned an interest in a medical corporation, Radiology, Inc. For the year 1978, he realized an income of $138,000.00 of which $120,000.00 was salary from the corporation. In addition, the corporation contributed on his behalf to pension and profit sharing plans for purposes of income tax deferral. As of June 30, 1978, the vested interest of Dr. Kays in the pension plan was $17,099.34 and the interest in the profit sharing plan was $77,162.97.

When the dissolution petition was filed, the husband was one of four doctors practicing as Radiology, Inc. Each owned an equal share in the business. Soon thereaft-

er, however, one of the physicians, Dr. Chalkley, retired and the corporation acquired his shares. On July 1, 1978, prior to the signing of the separation agreement, a successor physician, Dr. Sanders, purchased an interest in the business on an equal basis with Kays and the two other remaining doctors. The price paid by Dr. Sanders was $72,000.00 divided in payments of $24,000.00 each to Kays and the two others. After the transaction, Dr. Kays owned the same proportionate interest in the corporation as he did before the retirement of Dr. Chalkley and he had also realized $24,000.00 in cash.

In the trial of this case, the wife contended she relied on the husband's representation that for marital property division purposes, his interest in Radiology, Inc. was fairly valued at $72,000.00 and his interest in the pension and profit sharing plans was worth no more than $14,326.00. On this basis, she accepted the equity in the home, the household goods and car as reasonably equivalent values looking to an approximately equal division. Instead, she asserted that the value of Radiology, Inc. did not reveal the $24,000.00 paid to Dr. Kays by Dr. Sanders and the pension and profit sharing values were understated by at least $80,000.00. The trial court held that no misrepresentations were made, no fraud was practiced and it also found, ex gratia, that the separation agreement accomplished a fair and equitable division of marital property.

■ In the first and dispositive point of this appeal the wife contends the decision by the trial court is erroneous because it is not supported by substantial evidence and is against the weight of the evidence. It is, of course, axiomatic in a court tried case that the appellate court defers to the trial court's determination of credibility of witnesses and must affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence and does not erroneously declare or apply the law. *Structural Systems, Inc. v. Borg-Warner Health Products, Inc.*, 654 S.W.2d 300 (Mo. App.1983). We look, therefore, to the find-ings entered by the trial court on the issues of the major asset items mentioned above.

The dispute as to the value of the husband's interest in the professional corporation centered on the retirement of Dr. Chalkley, the entry into the corporation of the new shareholder, Dr. Sanders, and the cash payment of $24,000.00 each to Kays and the two other existing shareholders. It was generally agreed by all the witnesses that Dr. Kays' one-fourth interest in Radiology, Inc. after entry of Dr. Sanders was fairly measured by the amount which Sanders had paid for a one-fourth interest, $72,000.00. That figure, however, took no account of the $24,000.00 payment to Kays. The wife thus contended the true value of her husband's interest in Radiology, Inc. was not $72,000.00, the basis used in the property division, but $96,000.00. She also asserted that the fact of the $24,000.00 payment had been concealed.

The findings by the trial court do not disagree with this analysis and confirm that the valuation of the asset for marital asset distribution calculation was accepted at $72,000.00 and the $24,000.00 payment was not taken into account. The court made no finding as to the wife's claim that she lacked knowledge of the payment at the time the property settlement was negotiated and that receipt of the funds was concealed by the husband. Instead, the trial court found, in effect, that disclosure was irrelevant because, "the $24,000.00 defendant received in the summer of 1978 as a result of Dr. Sanders buying an interest in Radiology, Inc., was received as marital income and was disbursed by defendant for benefit of plaintiff and the rest of the family, including defendant." What the judgment appears to hold is, notwithstanding the wife's ignorance of the $24,000.00 asset, she has no complaint of fraud in negotiation of the property settlement because the husband spent the money for family purposes.

■ The law recognizes a cause of action to set aside a property settlement agreement executed prior to and in contemplation of divorce where the claim is made

that the agreement was procured through fraud. *Troxell v. Troxell*, 563 S.W.2d 135, 145 (Mo.App.1978). The elements of a cause of action to set aside a property settlement agreement on the grounds of fraud are the same as in any other case based on fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) his intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of the falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury. *Alexander v. Sagehorn*, 600 S.W.2d 198, 200 (Mo.App. 1980).

■ The overwhelming weight of the evidence established that appellant wife was unaware of the $24,000.00 payment and that this value was not taken into account in the division of marital assets. The trial court implicitly so found when it justified the omission of the fund on the ground the money was spent for the family's benefit. The evidence further proved, without any substantial controversy, that the husband did not disclose the payment by Sanders, but instead, represented to the wife that the Sanders transaction did not affect the $72,000.00 valuation of his interest in the business. The husband was fully aware of the payment received by him at the time the property division was under discussion and he was also aware that the wife was relying on him and his attorney to make disclosure of the assets figuring in the property division. The elements of a fraud case, set out above, were proved by substantial, credible evidence and the trial court erred when it ruled to the contrary.

Although the judgment by the trial court contained an express finding on the issue of fraudulent misrepresentations, the judgment as to the Radiology, Inc., property interest was actually grounded on the conclusion that the $24,000.00 fund was irrelevant to marital property division because of the manner in which the money was spent. It is to be noted that the substantial portion of the fund was intact when the property division was agreed and thus, this is not a case of an asset dissipated and not accountable for division.

The legal theory purportedly underlying the decision by the trial court would hold that a claim for rescission of a contract procured by fraud may be defeated if the party committing the fraud proves a general benefit to the complaining party by subsequent expenditure of the funds fraudulently concealed. We are aware of no authority supporting such a proposition and the briefs filed here have cited none. Assuming, however, that in the field of equity, to which the wife's petition here is addressed, and also in the particular circumstances of a division of marital property, a balancing of benefits could be struck, there was no substantial credible evidence in this case to support the trial court's finding that the wife received any offsetting benefits from the $24,000.00 fund sufficient to moot the property division issue.

Dr. Kays supplied a list compiled from cancelled checks accounting for expenditures of the $24,000.00 purportedly for the benefit of appellant and the family. The exhibit, together with explanatory testimony by the witnesses, comprised the only evidence offered to support the contention that appellant has no cause to complain about exclusion of the $24,000.00 from consideration in the division of marital assets. The list was as follows:

"SUMMARY OF DR. KAYS' DISTRIBUTION OF SANDERS BUY-IN
($24,000.00)

| Date | Amount | Who Received It | What it was for |
|---|---|---|---|
| 07–06–78 | $ 2,000.00 | Joyce Curtis | Trip |
| 07–14–78 | 998.41 | Buchroeder's | Marital debt |
| 07–24–78 | 510.00 | Grover | House repair (received by Plaintiff) |
| 07–24–78 | 5,190.00 | Internal Revenue Service | 3rd & 4th quarter tax payments |

"SUMMARY OF DR. KAYS' DISTRIBUTION OF SANDERS BUY–IN
($24,000.00)

| Date | Amount | Who Received It | What it was for |
|---|---|---|---|
| 08–19–78 | 5,000.00 | Joyce Curtis | August alimony (advanced) |
| 09–01–78 | 2,564.00 | Pete Kays | Jeep for Pete (son) |
| 09–06–78 | 2,552.00 | David Rogers | Plaintiff's attorney fees in divorce |
| 09–12–78 | 1,500.00 | Gary Tatlow | Dr. Kays' attorney fees for divorce |
| 09–27–78 | 1,600.00 | Jerry Coffman | Bass boat |
| 09–28–78 | 537.63 | Steve Smith | Tax advice to Plaintiff and Defendant |
| Total | $22,452.04" | | |

It is first to be noted that many of the payments shown were made after the separation agreement was concluded and some were subsequent to entry of the dissolution decree. The accounting belies the assumption, implicit in the trial court's finding, that the money was spent at an earlier date and therefore was not to be considered in the division of marital assets.

Apart from this, the finding by the trial court is fallacious because the payments allegedly constituting offsetting benefits were in fact payments discharging obligations of the husband assumed by him under the separation agreement. Under the terms of the property settlement, the husband agreed to pay the wife $5,000.00 in alimony September 1, 1978 and to pay the attorney fees for both parties in the divorce action. Those items on the list, totaling $9,052.00, were therefore the wife's to claim as of right under the agreement and not as a gratuitous distribution of a share in the undisclosed fund.

The prepayment of $5,190.00 to Internal Revenue as 3rd and 4th quarter 1978 estimated tax payments was not otherwise explained, but there is no ground to attribute any benefit to the wife from this payment. The payments were not due when made and the major portion of the earnings period involved fell after the separation agreement and after the decree. So, too, was there no basis to charge appellant with a benefit from purchase of the Jeep, which was titled in respondent's name and retained in his possession, or the bass boat jointly purchased by Dr. Kays and his brother-in-law.

As to the $2,000.00 shown to have been paid to appellant for a trip, the amount was provided to cover the expenses for the parties' children to accompany the wife on an out of state job interview when respondent was unable to keep the children himself as had been planned earlier.

■ In sum, the trial court erred as a matter of law in ruling that disbursements by the husband from the undisclosed cash fund, even if ostensibly for the wife's benefit, negated her claim of fraud in the procurement of the property settlement contract. The trial court also erred in its finding of fact concerning disbursements from the fund because there is no substantial evidence in the record of any offsetting benefits to the wife cognizable as a substitute for marital property division.

The fraud established by non-disclosure of the cash fund resulting from the Sanders buy-in payment is sufficient to resolve this appeal and to grant appellant rescission of the separation agreement. That result, of course, will require the parties to renegotiate an agreement for division of marital property and associated provisions for maintenance to the wife, or failing that, to secure a judicial division of assets and an award of maintenance.[1] Because the case will not end here but must proceed

1. The record indicates the wife has remarried and thus the issue of maintenance is of limited but essential recognition because of the interrelation of that subject in payments already received and distribution of marital property.

somewhat anew on the property disposition issues, some discussion of appellant's claim that respondent also failed to disclose the true value of his interest in the Radiology, Inc. pension and profit sharing plans is appropriate.

■ The fact was undisputed that on June 30, 1978, the amount paid into the plans for the benefit of Dr. Kays was $94,262.31. It is equally clear from this record that appellant was not aware of the true amount but negotiated the property settlement on the assumption the value was $14,326.80. The trial court found the value to be a third figure, $26,581.97, but also ruled appellant to have no complaint because it found the property division to be fair notwithstanding the discrepancy. Suffice it to say that the issue in the case was whether material representations had been made to the wife which had induced her to negotiate an agreement in ignorance of the true facts. The opinion of the trial court as to the fairness of an agreement so undertaken is irrelevant.

■ In addition to being free of fraud, agreements between husband and wife in settlement of property rights should be fair, just and equitable. *McCarty v. McCarty*, 300 S.W.2d 394, 403 (Mo.1957). Concealment of a material fact of a transaction which a party has a duty to disclose constitutes fraud as much as though an affirmative representation is given. *Daffin v. Daffin*, 567 S.W.2d 672, 677 (Mo.App. 1978). If a fact is peculiarly within the knowledge of one party by reason of his superior knowledge and not within the fair and reasonable reach of the other party, a legal duty of disclosure arises and concealment of the fact by silence is fraud. *Parker v. Green*, 340 S.W.2d 435, 439 (Mo.App. 1960).

Initially, respondent represented to appellant that the value of his interest in

Radiology, Inc., including the pension and profit sharing plans was $60,000.00 to $70,000.00.[2] When pressed for details as to exact dollar amounts on the plans, respondent indicated he would have his insurance agent make the calculations and give the figures to appellant. A memo from the insurance agent followed giving the values of two policies at $14,326.80. Appellant made no further inquiry and respondent volunteered no more information. The facts were, as later discovered, that the insurance agent memo referred only to the pension plan. No insurance was involved in the profit sharing plan for which a separate paid in value at the time was $77,162.97.

Several facts underscore the duty which respondent had to make a full disclosure of the pension and profit sharing plan values. The parties were not at the time in the status of adversaries dealing at arms length. Although each was represented by an attorney, they continued to discuss economic matters between themselves and exchanged information. The confidential relationship incidental to the marriage continued with a corresponding duty of disclosure. Respondent possessed superior knowledge about his business affairs and even if he had no current knowledge of the status of the profit sharing account, the information was readily accessible. Moreover, respondent volunteered to secure the value figures for his wife knowing the purpose to be an agreement for a property division. Having assumed to supply the information, he was obligated to report fully and accurately.

■ The facts and circumstances support appellant's claim that the actual values of the pension and profit sharing plans were concealed from her with the consequence that she suffered injury in the denial of her right to negotiate a property settlement with knowledge of the extent of

---

**2.** Ordinarily, a representation by the owner of property as to its value is an expression of an opinion and will not support a claim of fraud. The rule is applicable to an exchange of opinions between spouses negotiating a marital property division. Here, however, the conduct

of respondent amounted to more than a mere expression of opinion. He not only understated the value of his business assets by more than one-half, he tacitly concealed from appellant the facts about those assets which directly affected the property division.

property to be divided. Indeed, the trial court's finding of a value substantially more than shown by the information supplied to appellant confirms the non-disclosure. In the settlement of property interests between spouses, it is not the rule of the marketplace which prevails.

■ The non-disclosure of respondent's interest in the profit sharing plan adds weight to the conclusion that appellant is entitled to rescission of the agreement. When the paid in value of the profit sharing plan is added to the cash fund discussed earlier, marital asset values not accounted for in the property division total more than $100,000.00. That figure, of course, includes the profit sharing plan at the 1978 paid in amount. The figure used by the trial court, $26,581.97, represents a discount of some 70% by reason of income taxes and penalties charged if early withdrawal is made in the full amount. As the court points out in *Alvino v. Alvino*, 659 S.W.2d 266 (Mo.App.1983), the assumption that a pension and profit sharing plan will be terminated by lump sum distribution on forcible retirement is neither just nor economically sound. Other alternative methods for division discussed in *Alvino* merit consideration where pension and profit sharing plans are involved and are recommended to the parties here as a method to realize a value from the plans more nearly reflecting their true worth.

Appellant also asserts error in the ruling by the trial court that respondent did not breach the terms of the separation agreement when he surrendered two policies of life insurance and realized some $12,000.00 in cash values. While the trial court did err in this finding, the question is mooted by the granting of rescission under appellant's alternate counts. That and other claims for relief by appellant which, under her petition, are consistent only with ratification of the separation agreement, fall with avoidance of the settlement contract.

For the reasons stated, the judgment in favor of respondent as to Count I of appellant's petition must be reversed and judgment entered rescinding the separation agreement. As a consequence of this disposition, the marriage dissolution decree which depended on the validity of the separation agreement is no longer operative to divide the marital property. The decree must therefore be reopened for submission of a new property settlement agreement or, failing that, for a hearing and order by the court dividing the marital assets.

Upon the reopening of the dissolution decree, the trial court is to be guided in the division of property by the provisions of § 452.330, RSMo 1978, nothing in this opinion being intended as any restriction on the latitude of the trial court to order a division which appears on the evidence to be just. As to items of marital property which may have been divided between the parties in kind and which, because of the lapse of time, may no longer be retrieved or may be affected by the intervention of third party interests, the trial court would be well advised to accept such distributions and charge the account in division of the party who received the asset at its value determined in the reopened proceeding.

The issue of maintenance to appellant otherwise settled by the rescinded agreement is similarly reopened by the current judgment. The trial court will, in the absence of agreement by the parties, be obliged to decide the question of maintenance based on the unmarried status of appellant as of the controlling date in 1978 and taking into account the marital property set over to appellant and her potential, if any, for self-generated income. Orders as to child custody and support having been relitigated between the parties subsequent to entry of the dissolution decree are not affected by the judgment herein.

The judgment in favor of respondent and against appellant is reversed. The cause is remanded with directions to enter judgment in favor of appellant for rescission of the separation agreement as prayed in Count I of appellant's petition, for judgment that appellant take nothing by Counts II, III and IV of her petition and for pro-

ceedings on reopening of the decree of dissolution in accordance with this opinion.

All concur.