### In re MARRIAGE OF HERNDON.

**Linda Ellen HERNDON,**
**Petitioner–Appellant,**

v.

**Larry Clyde HERNDON,**
**Respondent–Respondent.**

**No. 15272.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 1988.

Scott B. Tinsley, Springfield, for petitioner-appellant.

Ivella McWhorter Elsey, Robert M. Sweere, Springfield, for respondent-respondent.

HOGAN, Judge.

In this dissolution of marriage case, petitioner Linda Ellen Herndon (hereinafter plaintiff) appeals from the trial court's refusal to set aside that part of its decree approving a separation agreement and incorporating that agreement in its decree. The plaintiff assigns error to the trial court's action on the grounds that there was no evidence, and therefore the trial court could not consider, the statutory factors relevant to the disposition of the property and the need of either spouse for maintenance; the separation agreement was not in writing, as required by § 452.325.1, RSMo 1986,[1] and the agreement was incomplete and ambiguous on its face.

The 17-page transcript before us shows that the parties appeared before the court on May 19, 1987. Plaintiff appeared only by counsel; the respondent (defendant) appeared in person with his attorney. Plaintiff's counsel was asked if he had a statement to make to the court. He replied:

"Yes, Your Honor. I'd like to make a statement to the Court and explain the circumstances relating to Petitioner's not being present in court, although she did attend court.

Late this morning ... subsequent to some negotiations by telephone and otherwise, *Mrs. Elsey* [defendant's attorney] *and I reached an agreement relating to the settlement of this matter from a financial standpoint.*

*I advised my client of that ... It was actually our counter-offer* [sic] *that was accepted, and she was in favor of it.*

When I arrived at the courthouse at approximately a quarter of one this afternoon, my client was in an extreme state of agitation and very upset about the presence of the Respondent's family here; and, apparently, there's been some —a great deal of ill feeling in the past, and [there are] deep-seated animosities, I presume, on both sides. And for that reason she was very distraught and very upset.

... [*Plaintiff*] *is still completely agreeable to the agreement worked out. She has authorized me to appear. She does not wish to be in the courtroom or even in the courthouse, and she and I reached an agreement that we would ask Mrs. Elsey if they would take it up on the cross-petition on the same basis as agreed upon with relation to the money; and my client has expressly authorized that.*" (Emphasis ours.)

The trial court heard evidence concerning the extent and nature of the marital estate and the parties' separate property. The defendant testified that he was in the construction business; he built houses. His business was non-marital property. He had furniture and other assets in his possession; those items were non-marital items. Plaintiff had separate property; it was in her possession.

It was further brought out that the defendant had agreed to pay plaintiff the sum of $1,500 in cash; he had agreed to pay plaintiff's "doctor bills" in the "approximate sum of $1,700 to $1,800." Defendant had also agreed to deed a house at 103 Lorraine in Nixa, Missouri, to the plaintiff. The deed was to be delivered to the defendant's attorney and was to be held by the defendant's attorney until the plaintiff obtained "financing" to discharge the indebtedness against the house. The defendant owned boats and vehicles as his separate property; plaintiff owned an automobile as her separate property. It had been agreed that the parties would assign the titles to the boat and the motor vehicles so each party would have title to his separate property.

---

1. References to statutes and rules are to RSMo 1986 and V.A.M.S., except where otherwise noted.

A decree was entered. As material, it reads:

"... 2. A written agreement marked Exhibit "A" is not unconscionable and the parties are directed to carry out the terms of the said agreement, which is filed herein and made a part of this decree in its entirety.

3. No marital property is to be distributed, except parties ordered to sign to assist other party. Respondent is orded [sic] to pay Petitioner's doctor bill but not to exceed the amount of $1,800.

4. Non-marital property is set over to each party.

5. Each party shall keep the property now in his or her possession.

6. Parties release all tort claims against each other.

7. Neither party shall pay maintenance to the other, except Respondent to pay Petitioner $1,500 in full settlement of all rights and claims existing during the marriage.

8. Each party shall pay their own attorney fees, except for any temporary amounts heretoface [sic] paid.

9. Costs are taxed against Petitioner.

10. Further orders are set forth on the attached schedule "A."

"Schedule 'A' " is attached to the decree and reads as follows:

"1. By reason of economic and other practical circumstances shown in evidence, the following real estate shall remain in the names [sic] of the Herndon Construction Co. Inc., and managed and sold under these provisions:

103 Lorraine, Nixa, MO, upon refinancing of same by Petitioner, the deed shall be delivered. The purchase price shall be no more than $55,000.00, which shall include principal and interest due or already paid by Respondent, such financing to be effective in 30–45 days.

2. The real estate shall be in the possession of Respondent until delivery thereof to buyer."

The material parts of the separation agreement which is incorporated in the decree read as follows:

"... 2. There is no marital property to be divided except property now in possession of each party and parties to sign over titles to motor vehicles. Wife shall receive as her non-marital property the items set out on Schedule "B" attached to and made part hereof. Husband to pay wife $1,500.00 in full settlement of all rights and claims existing during the marriage.

3. Husband shall pay Doctor bills of Linda Herndon, but not to exceed $1,800.00. Husband shall receive as his non-marital property all items set out on Schedule "A" attached to and made part hereof.

4. Both parties agree that the residential property located a [sic] 103 Lorraine, Nixa, Missouri shall be refinanced by Petitioner and deed delivered to wife. The purchase price shall be no more than $55,000.00, which shall include principal and interest due or already paid by Respondent. Such financing to be effected in 30–45 days. The real estate shall be in the possession of the Husband until refinancing has been completed....

6. Husband shall pay his attorney fees.

7. Wife shall pay her attorney fees and Court costs.

8. It is mutually agreed that each party hereby waives the rights or claims against the other for any tort arising out of or during the marriage of the parties.

9. The parties shall execute all papers necessary to effectuate this agreement...."

Several "schedules" are attached to this separation agreement. "Schedule 'A' " recites that "Husband's Non-marital Property" consists of: a) "His clothing and personal items now in his possession"; b) "Herndon Construction Company common stock"; c) "Recliner"; d) "Couch," and e) "Weight Bench." His marital property—according to the schedule—consisted of: a) a "1987 Ranger Boat, Motor and Trailer VIN # _____," and b) a "1982 Oldsmobile." "Schedule 'B' " lists the plaintiff's non-marital property as "Her clothing and

personal items now in her possession" and her "Settlement Property" as a "House located at 103 Lorraine, Nixa, Mo. upon refinancing."

■ Among other things, the plaintiff now complains that the trial court approved a separation agreement which was not in writing as required by § 452.325.1 and without considering the economic circumstances of the parties and the necessity for maintenance and other relevant evidence as required by § 452.325.2. The second aspect of this contention may be disposed of summarily. As we read *Dow v. Dow,* 732 S.W.2d 906, 907–8 (Mo.banc 1987), § 452.325.5 does not explicitly require the trial court to investigate the economic circumstances of the parties to determine conscionability. Rather, the statute is properly construed to mean that the terms of the agreement are binding on the court unless it finds that economic evidence produced by the parties on their own motion, or requested by the court, demonstrates unconscionability. In short, § 452.325.2 allows, but does not require, the trial judge to investigate and examine the economic circumstances of the parties and other relevant factors in determining conscionability of the separation agreement. *Dow v. Dow,* 732 S.W.2d at 908.

The plaintiff also suggests that because the separation agreement was not in writing as required by § 452.325.1, there was no valid division of property. Section 452.-325.1 provides that the parties "may enter into a written separation agreement" and some courts have interpreted the statute to require a writing. *Turpin v. Turpin,* 570 S.W.2d 831, 835 (Mo.App.1978). Other courts have held that the phrase "may enter into a written separation agreement" is permissive and does not preclude a stipulated oral agreement. *Peirick v. Peirick,* 641 S.W.2d 195, 196[1] (Mo.App.1982); *In re Marriage of Chambers,* 657 P.2d 458, 460–61[4] (Colo.App.1982); *Calloway v. Calloway,* 707 S.W.2d 789, 790–91[1] (Ky. App.1986). For our purposes, a definitive interpretation of the words "may enter into a written separation agreement" is unnecessary. There was a written agreement in this case; it was signed only by the defendant husband but was, in general, agreed to by the plaintiff's attorney.

We are not inclined to reverse or set aside the trial court's judgment for any reason advanced in this court. Plaintiff filed a written motion in the trial court to set the division of property aside, but she alleged no fraud, duress, coercion, variance with public policy or other generally recognized ground for setting aside a separation agreement. Sketchy, imprecise agreements to divide property in a dissolution proceeding may become a source of great difficulty for the parties, *see, e.g., State ex rel. McClintock v. Black,* 608 S.W.2d 405 (Mo.banc 1980); Yoder By *Larsen v. Horton,* 678 S.W.2d 901 (Mo.App.1984), but error without prejudicial effect upon the appealing party's rights is not grounds for reversal. Rule 84.13(b); *Machens v. Machens,* 263 S.W.2d 724, 732[7] (Mo.1954).

■ The record shows that the trial court acted upon the assurance of counsel that the plaintiff wanted the trial to proceed in her absence. Plaintiff's attorney effected a compromise to which he believed the plaintiff had agreed. When an attorney is authorized by his client to compromise a law suit, the attorney has the legal right to do so, and the client is bound thereby unless the settlement is grossly unfair. *Allen v. Fewel,* 337 Mo. 955, 960, 87 S.W.2d 142, 145[1] (1935). The plaintiff chose to be absent while her rights were being adjudicated, but her absence did not nullify the proceeding. Whether a court has abused its discretion in proceeding with a civil case in the absence of a party depends upon the circumstances, *State v. Hurst,* 347 S.W.2d 177, 178 (Mo.1961); *Brown v. Stroeter,* 263 S.W.2d 458, 462 (Mo.App.1953), and we find nothing in the record before us to indicate an abuse of discretion. The appeal as presented is without merit. Accordingly, the judgment is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.