Elaine Suzie KARNEY, Appellant,

v.

Mark and Robert WOHL, Respondent.

No. 56095.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 23, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 28, 1990.

Application to Transfer Denied
April 17, 1990.

Sanford Goffstein, Weiss, Goffstein, Kraus, St. Louis, for appellant.

G. William Weier, Carol Bader, Weier, Hockensmith & Sherby, St. Louis, for respondent.

HAMILTON, Presiding Judge.

Appellant Elaine Suzie Karney (hereinafter Wife) filed a three count petition against Respondents, her former husband Mark Wohl (hereinafter Husband) and his father Robert Wohl (hereinafter Father). In Count I she sought to set aside and rescind the Settlement Agreement, executed on November 25, 1981, with respect to the division of marital property, which had been incorporated into the Dissolution Decree of Wife and Husband entered January 4, 1982. In Counts II and III, Wife sought actual and punitive damages for fraudulent misrepresentations made by Husband to Wife and for conspiracy to defraud Wife by Husband and Father.

The trial court sustained Respondents' motion for summary judgment and dismissed the case without prejudice. Wife appealed. We dismissed the appeal without prejudice, finding the trial court's order was not final because the trial court had dismissed the case without prejudice. *Karney v. Wohl*, 747 S.W.2d 214 (Mo.App. 1988). Thereafter, the parties filed additional affidavits with the trial court and, on December 9, 1988, that court by memorandum order sustained Respondents' amended motion for summary judgment. This appeal followed. We reverse.

The record discloses that the marriage of Wife and Husband was dissolved on January 4, 1982. On July 10, 1981, during discovery in the dissolution action, Husband testified in deposition that he had transferred his stock in Premium Associates, Ltd., to his father Robert J. Wohl for $17 on February 18, 1980, and that he then owned no stock in that company. He further testified that $17 was the original purchase price of the stock and that his father had required him to transfer the stock as a condition of his re-employment with Premium Associates, Ltd. Moreover, Husband stated that he had no idea of the value of the stock when he surrendered it and was unaware that it had substantial value at that time.

During the dissolution proceeding, Husband also produced copies of stock certificates numbered 38, 39, and 41. He claimed that these certificates represented the stock he surrendered to Premium Associates, Ltd., on February 18, 1980: stock certificate number 38, representing 50,000 shares, issued to Mark R. Wohl on June 30, 1975; stock certificate number 39, representing 50,000 shares, issued to Mark R. Wohl on June 30, 1975; and stock certificate 41, representing 37,716⅔ shares, issued to Mark R. Wohl on June 30, 1975.

On November 25, 1981, Husband and Wife entered into a settlement agreement that is reflected in the record. That agreement contained no specific reference to any ownership in Premium Associates, Ltd. It did state, however, that

> [e]ach of the parties hereby represents and warrants to the other party (a) that all separate property of the parties of which such party has knowledge has been disclosed and has been set aside to said party in this Settlement Agreement; (b) that all marital property of the parties of which such party has knowledge has been disclosed and is reflected in this Settlement Agreement; and (c) that all of their marital property has been divided by virtue of this Settlement Agreement; and (d) that no further orders regarding property need be entered by this Court.

The Settlement Agreement was incorporated into the Dissolution of Marriage Decree.

The record before us also contains corporate income tax returns for Premium Associates, Ltd., for the years 1977 through 1982. These returns show that Husband owned 27.06 percent of the company's stock in 1977 and 26.66 percent of its stock during the years 1978 through 1982.

In addition, on September 15, 1980, Husband executed a personal financial statement in which he represented and warranted to Landmark Bank that the information provided was true and correct. In the statement, Husband represented that, as of September 12, 1980, he owned forty percent interest in Premium Associates which he valued at $200,000.

In a separate legal proceeding in St. Louis County Circuit Court, in which Hus-

band and Father were defendants,[1] Father testified that he and Husband each owned forty percent of the stock of Premium Associates, Ltd., and that a forty percent interest was valued at $200,000. Father also admitted that he purchased his son's stock in the company for $17 just before his son "had his first separation from his wife."

In an affidavit submitted to the trial court in the instant action, Father stated that Husband and Wife separated at the end of 1979. He further stated that, in the latter part of February, 1980, he purchased Husband's stock for $17.

Pursuant to a document request filed by Wife in the present case, Husband produced the stock certificates of Premium Associates, Ltd. Among those produced were certificates numbered 38, 39, and 41. Certificate number 38, representing 12,500 shares was issued on November 2, 1977, to Robert J. Wohl who surrendered it on January 3, 1978. Following cancellation of certificate number 38, a new certificate number 43, representing 12,500 shares, was issued to Harold Glaser. Certificate number 39, representing 12,500 shares was issued on November 2, 1977, to Robert J. Wohl who surrendered it on January 2, 1978. Following cancellation of certificate number 39, a new certificate number 43, representing 12,500 shares was issued to Harold Glaser. Certificate number 41, representing 76,333⅓ shares was issued on January 2, 1978, to Mark R. Wohl who surrendered it on February 18, 1980. Following cancellation of certificate number 41, a new certificate number 45, representing 76,333⅓ shares was issued to Robert J. Wohl.

On appeal, Wife asserts the trial court erred in granting summary judgment to Respondents because (1) she is entitled to bring a separate action in equity to distribute marital property not considered by the trial court at dissolution; (2) pleading and proof of extrinsic fraud is not a prerequisite to recovery in this action; and (3) whether Wife, who was represented by counsel at the time of dissolution, had a

right to rely upon Respondents' misrepresentations is a question of fact for trier of fact to decide.

■ We note initially that summary judgment is appropriate when the documents before the trial court, including pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, demonstrate that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. Rule 74.04(c). A fact that is of such legal probative force as would control or determine the outcome of the litigation constitutes a material fact. *Ware v. St. Louis Car Co.*, 384 S.W.2d 287, 290 (Mo.App.1964). The slightest doubt about such a fact thus gives rise to a genuine issue of material fact. *See Signature Pool v. City of Manchester*, 743 S.W.2d 538, 540 (Mo.App.1987). In reviewing a summary judgment, therefore, we must scrutinize the record most favorably to the party against whom the judgment was entered and accord that party the benefit of every doubt. *Triggs v. Risinger*, 772 S.W.2d 381, 382 (Mo.App.1989).

In her first point on appeal, Wife asserts that she is entitled to bring this separate suit in equity to divide marital property not considered by the dissolution court by reason of Husband's fraudulent misrepresentations. Respondents contend, however, that the trial court correctly granted summary judgment because Sections 452.110 and 452.360.2 RSMo.1986[2] bar any order affecting or altering the distribution of marital property set forth in a dissolution decree. We disagree with this contention.

■ Section 452.110 does provide in pertinent part that "[n]o petition for review of any judgment for divorce ... shall be allowed...." Moreover, Section 452.360.2 provides that "[t]he court's order as it affects distribution of marital property shall be a final order not subject to modification." Wife, however, neither has filed a petition for review of the dissolution judg-

---

1. *Smith v. Wohl*, 702 S.W.2d 905 (Mo.App.1985).

2. All statutory references are to RSMo.1986 unless otherwise indicated.

ment nor has sought modification of that judgment. Instead, she has filed a separate suit in equity, *inter alia*, to set aside and rescind the Settlement Agreement with respect to the division of certain marital property not considered by the dissolution court. Such a suit is not precluded by either Section 452.110 or Section 452.360.2.

■ Decisional law likewise permits Wife's course of action. After the trial court has ordered a partial distribution of marital property and the judgment of dissolution is final, the dissolution court lacks jurisdiction under a motion filed in the original case to determine the nature of omitted property or to provide for its distribution. The remedy is to institute a separate suit in equity to determine the nature of the property and its proper allocation. *Murphy v. Murphy*, 716 S.W.2d 870, 871 (Mo.App.1986); *Gehm v. Gehm*, 707 S.W.2d 491, 495 (Mo.App.1986). Where, as here, the record discloses that the dissolution court itself never considered whether Husband or Wife had ownership interests in Premium Associates, Ltd., and, if they did, what allocation of those interests was appropriate, a separate proceeding in equity is a proper method by which to obtain judicial consideration of the omitted property. *Murphy v. Murphy*, 763 S.W.2d 237, 241 (Mo.App.1988) [hereinafter *Murphy II* ].

■ Wife next contends that summary judgment was erroneously granted because pleading and proof of fraud extrinsic to the dissolution judgment is not required in order for her to recover under Count I of this action to set aside portions of a settlement agreement.[3]

Respondents' position below and on appeal, that Wife must plead and prove extrinsic fraud in order to prevail, is based upon those cases in which a litigant seeks to set aside a decree of dissolution after it has become final and to relitigate all issues. *See e.g.*, *McCarty v. McCarty*, 300 S.W.2d 394, 400–01 (Mo.1957); *Jones v. Jones*, 254 S.W.2d 260, 261 (Mo.App.1953). That relief requires pleading and proof of fraud in the procurement, that is to say, fraud extrinsic to the dissolution judgment. For such fraud to have existed, it must have related,

> not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. In other words, the fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.

*Jones*, 254 S.W.2d at 261.

Wife, however, seeks not to set aside the dissolution decree, but to rescind portions of a property settlement in order to allocate marital property not previously considered.

Under the allegations of the Petition, Husband fraudulently misrepresented to Wife that he had transferred his stock in Premium Associates, Ltd., when, in fact, he had not. As a result, Wife alleges that "by virtue of the fraudulent misrepresentations made by Mark Wohl, [she] was deprived of her marital interest in the shares of stock of Premium Associates, Ltd., all to her detriment." Although fraud is alleged to have been the reason Wife was denied a marital interest in the stock of Premium Associates, Ltd., an allegation of fraud is unnecessary to invoke the trial court's jurisdiction to distribute marital property omitted from consideration at the dissolution. In *Gehm*, 707 S.W.2d at 493, in response to Husband's motion to modify custodial provisions in a dissolution decree, Wife filed a motion to set aside the decree of dissolution as null and void, asserting, *inter alia*, that Husband had procured the dissolution judgment through fraud. Her fraud claim was based upon her Husband's

---

3. Recovery under Counts II and III, which seek damages for fraudulent misrepresentations, depends upon Wife successfully proving her allegations of fraud under Count I. A former spouse, who claims to have been defrauded by representations of marital property can file a separate action for fraud and may elect to sue for damages in a tort action at law or to rescind. *Wood v. Wood*, 716 S.W.2d 491, 493 (Mo.App. 1986).

alleged representation to her and to their joint attorney that all marital assets had been disclosed when, in fact, his pension and profit-sharing plan and certain property in Kansas were undisclosed. *Id.* at 493–4. The dissolution court had earlier approved the parties' property settlement. *Id.* at 492. Although finding that neither the pleadings nor proof demonstrated extrinsic fraud such as would support setting aside the dissolution judgment, the court of appeals found that Wife's pleadings as framed would sustain a separate action in equity to set aside the agreement. *Id.* at 494–5. *Accord Curtis v. Kays,* 670 S.W.2d 887 (Mo.App.1984). Similarly in *Murphy II,* 763 S.W.2d at 238–9, a former wife filed an action in equity to divide an undistributed marital asset, the vested nondisability military pension of her former husband. Absent from the opinion in *Murphy II* is any indication that former wife alleged fraud. Even though her former husband had testified at the dissolution trial that he was drawing a pension, nothing in the original dissolution decree or in the appellate record indicated any allocation or division of the pension by the dissolution court. As a result, the court of appeals approved the trial court's division of the pension as a proper exercise of the trial court's discretion.

The relief that Wife requests in Count I of the instant action tracks the relief approved in *Gehm* and *Murphy II.* She seeks not to set aside a dissolution judgment and to relitigate matters already addressed but merely to set aside and rescind that portion of a settlement agreement pertaining to the division of marital property in order to divide heretofore unallocated marital assets. The Missouri Supreme Court has looked with approval upon such a remedy for this situation. In *State ex rel. McClintock v. Black,* 608 S.W.2d 405, 407 (Mo. banc 1980), which involved no allegations of fraud, the Court suggested as appropriate a separate proceeding for equitable relief in order to allocate marital property not distributed by a dissolution decree that had incorporated a separation agreement purporting to distribute all marital property. Thus, Wife is correct that

pleading and proof of extrinsic fraud is unnecessary to obtain the relief she seeks in Count I of her petition.

In her final point, Wife asserts that summary judgment was erroneously entered because the record discloses an issue of material fact with respect to Wife's right to rely upon Husband's representations. We agree. Specifically, this point addresses Respondents' contention below that, because counsel represented Wife during the dissolution proceedings, Wife had no right to rely upon Husband's representations. Having no right to rely upon these representations, therefore, precluded proof of an essential element of fraud, and Wife's action necessarily must fail. Whether Wife in fact relied on Husband's alleged representations, however, is a question of fact and whether she was entitled to rely upon his alleged representations is to be determined on the evidence presented to the trier of fact. *In re Marriage of Harrison,* 734 S.W.2d 934 (Mo.App.1987).

The judgment of the trial court is reversed and the cause remanded.

CARL R. GAERTNER and STEPHAN, JJ., concur.