In re the MARRIAGE OF Mary Jo TURNER and Fredis E. Turner.

Mary Jo TURNER,
Petitioner–Appellant,

v.

Fredis E. TURNER,
Respondent–Respondent.

No. 16600.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 6, 1991.

John S. Pratt, Pratt and Fossard, Springfield, for petitioner-appellant.

Ben K. Upp, Montgomery, Twibell, Upp & Greene, Springfield, for respondent-respondent.

MAUS, Presiding Judge.

On March 31, 1988, the marriage of 37 years of petitioner Mary Jo Turner (wife) and respondent Fredis E. Turner (husband), was terminated by a decree of dissolution. That decree found a separation agreement not to be unconscionable. It was incorporated into the decree. The marital property was distributed by that decree. On November 18, 1988, the wife filed in the dissolution action a motion to set aside the agreement and decree "on equitable grounds". Specifically, the motion alleged "[t]hat this Court should invoke its equitable powers to set aside the Decree of Dissolution entered by the Court by reason of the misrepresentation of the Respondent as to value and to reopen the dissolution case ... as ... to the division of property, periodic maintenance and attorney fees." The "misrepresentation of value" referred to the value of certain pension, retirement and stock benefits with husband's employer. The wife also filed a separate action to divide as marital property the difference between $12,818.00, the value of those benefits she alleges was represented by the husband, and her alleged actual value of $148,265.00 for the pension retirement and stock benefits. The motion and the separate action were consolidated. After hearing, the trial court denied the wife relief.

At the time of the dissolution, the wife was 58 years of age. The wife was employed as a realtor with Century 21 Beaumont. The wife was a graduate of Oklahoma State University, with a degree in business. She held a real estate broker's license. She had, at diverse times, worked as a teacher, medical secretary, and realtor.

At the time of the dissolution, the husband was employed as a district sales manager with Ralston–Purina, Inc. The husband was 58 years of age. He had worked for Purina for 34 years. During his employment, he acquired employee benefits, including certain insurance coverages, a retirement plan, and a savings plan. In March of 1987, the savings plan held 261 shares of stock and had a cash balance of $426.39. Upon retirement at age 62 or thereafter, the husband would receive a pension of $1,525.00 per month.

At the time of the dissolution, the marital property consisted of motor vehicles, a home, the usual household goods and personal effects, a small bank account, other intangibles, and the employee benefits with Purina. The separation agreement confirmed the parties actual division of the household goods, personal effects and vehicles. By a separate paragraph, it provided the home would be the separate property of the wife. The remaining provisions concerning the division of marital property were:

"4. WIFE to receive all interest in Promissory Note executed by DENNIS and DONNA KENYON in the amount of $5,000.00 due and payable in 1987, her IRA account with principal balance of $5,000.00 and any and all bank accounts standing in her name.

5. HUSBAND to receive all pension, savings, stock and stock rights in Purina Mills and any and all bank accounts standing in his name."

On March 31, 1988, the wife appeared with the counsel by whom she filed her petition for dissolution on May 11, 1987. The husband appeared by counsel. The wife testified. Her testimony established the formal prerequisites for the dissolution of marriage and her conclusion that the separation agreement was "fair and conscionable". She asked that the agreement be approved by the court and incorporated into the decree of dissolution. That was done.

■ The wife's sole point on appeal is "the trial court abused its discretion in not setting aside the separation agreement and decree of dissolution" for the reasons stated in the point. A judgment finding a separation agreement not unconscionable and distributing marital property in accordance with that agreement is a final judgment. "A court has no inherent authority to set aside its own final judgment." *State ex rel. Carver v. Whipple*, 608 S.W.2d 410, 412 (Mo. banc 1980). The methods and grounds that had been available to set aside a final judgment have been categorized.

"As stated in *Hub State Bank v. Wyatt*, 589 S.W.2d 372 (Mo.App.1979), the court may not disturb its judgment after thirty days 'other than as invested by statute or common law procedures.' The statutory and common law procedures so referred to consist of an arsenal holding six weapons: (1) a separate suit in equity; (2) a statutory petition for review; (3) a nunc pro tunc order; (4) a motion in the nature of a writ of error coram nobis; (5) a motion showing fraud practiced on the court; and (6) a motion showing irregularity on the face of the record." *Kranz v. Centropolis Crusher, Inc.*, 630 S.W.2d 136, 138–139 (Mo.App.1982).

It was also recognized that

"[e]quity has jurisdiction to set aside a *default* judgment on the grounds of extrinsic fraud, accident or mistake. *Human Development Corp., etc. v. Wefel*, 527 S.W.2d 652, 656 (Mo.App.1975). Although a default judgment may be set aside for mistake, neglect chargeable against the defaulting party cuts off the grounds of mistake. *Id.*" *Massa v. Anderson*, 691 S.W.2d 496, 497 (Mo.App. 1985). (Emphasis added.)

Also see *Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883 (Mo. banc 1987). However, it was fundamental that a final

judgment would be set aside only for fraud extrinsic to the judgment.

"That relief requires pleading and proof of fraud in the procurement, that is to say, fraud extrinsic to the dissolution judgment. For such fraud to have existed, it must have related,

'not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. In other words, the fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.'" *Karney v. Wohl*, 785 S.W.2d 630, 633 (Mo.App.1990).

Also see *In re Marriage of Harrison*, 734 S.W.2d 934 (Mo.App.1987); *Gehm v. Gehm*, 707 S.W.2d 491 (Mo.App.1986).

■ A final judgment such as the one in question is an adjudication the separation agreement was not unconscionable. It should be noted that the test of unconscionability is not measured by the factors delineated in § 452.330. "[T]he property division was made by the parties' agreement, and the trial court was bound by that agreement unless the agreement is unconscionable, § 452.325(2)—unconscionability being an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Peirick v. Peirick*, 641 S.W.2d 195, 196–197 (Mo.App.1982). A motion or separate proceeding in equity to set aside such a judgment was not available to relitigate that adjudication on the basis of gross disproportionate distribution of the marital assets.

"These are factual matters which are not collateral or extrinsic to the judgment rendered. Appellant had the opportunity to litigate the issues at trial and his failure to do so does not give rise to a right to reopen a valid judgment." *In re Marriage of Brown*, 703 S.W.2d 59, 61 (Mo.App.1985).

Also see *Karney v. Wohl*, supra; *Sugrue v. Janssen*, 713 S.W.2d 44 (Mo.App.1986). Moreover, it has been held:

"[W]ife was present at the dissolution hearing and her attorney questioned husband regarding the fairness of the agreement. Under these circumstances, she cannot now contend the agreement, which was incorporated into the decree, is unconscionable. *Dow* [*v. Dow*, 732 S.W.2d 906 (Mo. banc 1987)]." *Arent v. Arent*, 759 S.W.2d 855, 856 (Mo.App. 1988).

■ Nevertheless, if a spouse enters into a separation agreement because of fraudulent misrepresentations or actions of the other spouse, that fraud has prevented the spouse from litigating the issue of a just distribution of the marital property as directed by § 452.330. In that sense, such fraud is extrinsic to the final judgment. At any rate, it has been consistently held that a separation agreement and a judgment distributing the marital property in accordance with that agreement could be set aside upon the basis of fraud in the procurement of that separation agreement. *In re Marriage of Harrison*, supra; *Curtis v. Kays*, 670 S.W.2d 887 (Mo.App.1984); *Alexander v. Sagehorn*, 600 S.W.2d 198 (Mo.App.1980); *Daffin v. Daffin*, 567 S.W.2d 672 (Mo.App.1978). Also see *Gehm v. Gehm*, supra. It is trite to restate that such a remedy was available only when a moving party carried the burden of proof to establish the traditional elements of fraud.

"The elements of a cause of action to set aside a property settlement agreement on the grounds of fraud are the same as in any other case based on fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) his intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of the falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury. *Alexander v. Sagehorn*, 600 S.W.2d 198, 200 (Mo.App. 1980)." *Curtis v. Kays*, supra at 891.

The duty of a party to make a disclosure has been partially summarized as follows:

> "If a fact is peculiarly within the knowledge of one party by reason of his superior knowledge and not within the fair and reasonable reach of the other party, a legal duty of disclosure arises...."

*Curtis v. Kays,* supra at 893.

The issues raised in this case fall within the purview of Rule 74.06, as amended, effective January 1, 1988. The relevant provisions of the amended rule are:

> **(b) Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

> **(c) Motion Under Subdivision (b)—Affect on Judgment—Time for Filing—Notice of Hearing—Service.** A motion under subdivision (b) does not affect the finality of a judgment or suspend its operation. The motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered. The motion and a notice of a time and place for hearing on the motion shall be served upon the parties to the judgment pursuant to Rule 54.

> **(d) Power of Court to Entertain Independent Action—Certain Writs Abolished.** This rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action."

It is immediately apparent that the issues that could be raised under the application of this amended Rule to the cause of action asserted by the wife are many and diverse.

■ However, that amended Rule was not cited or relied upon by either party in the trial court. It has not been cited or relied upon by either party in their briefs or oral arguments before this Court. "It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel." *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). Further, "[o]n appeal, a party is bound by the position he took in trial court; and the appellate court can review the case only upon the theory tried. *Spicer v. Farrell,* 650 S.W.2d 695, 697 (Mo. App.1983)." *McGlothin v. Eidelman & Traub, Inc.,* 733 S.W.2d 851, 853 (Mo.App. 1987). This court is not required to "develop a theory which was neither made nor briefed by plaintiff." *May Dept. Stores Co. v. Adworks, Inc.,* 740 S.W.2d 383, 386 (Mo.App.1987). For these reasons, the wife's point will be considered as stated and argued, disregarding amended Rule 74.06.

■ The wife's first reason the trial court erred is that the dissolution court that found the separation agreement not to be unconscionable had no evidence before it of the economic circumstances of the parties. The wife introduced the separation agreement, testified she thought it was fair, and asked the court to find it was not unconscionable. Before making that finding, the trial court could have required the introduction of evidence of those economic circumstances. But, it was not mandatory that it do so. *In re Marriage of Herndon,* 756 S.W.2d 656 (Mo.App.1988), citing *Dow v. Dow,* 732 S.W.2d 906 (Mo. banc 1987), overruling cases to the contrary. The fact the dissolution court did not make that requirement is not a basis to set aside the final judgment.

The wife's next stated reason is the trial court erred

"because Fredis had committed acts of extrinsic fraud when (1) he orally represented to Mary Jo that she was not entitled by law to any portion of the monthly retirement benefits that had accrued during the course of his employment with Ralston–Purina, Inc. ..."

■ That reason is based upon the wife's present interpretation of a conversation she had with the husband in a parking lot a few weeks before the separation agreement was signed. She said, "We discussed the house, primarily, and the Purina—the Purina property."—"Well, he said that it was somewhere around $25,000 that was in an account with Purina and that—well, of course, the retirement was his retirement." The following questions and answers reflect her testimony on direct examination concerning the retirement pension.

\* \* \* \* \* \*

"Q  Okay.  And did you ask him about his monthly income that he would receive from Purina when he retired from Purina?

A  I—I already knew just about what that was.  I don't remember the specific—specifically, the amount."

\* \* \* \* \* \*

"Q  I understand that you don't know the exact amount.  Mrs. Turner, what I'm asking you, though, did he say anything about giving you a part of the monthly retirement benefits that he was going to receive?

A  No.

Q  Did he make any representations to you about whether you had any rights to that or not?

A  Yes.

Q  Okay.  And what did he say to you?

A  Well, he didn't say a right, but it was the understanding that that was his retirement.  The employee is the—receives the retirement."

\* \* \* \* \* \*

Wife argues that this testimony established a fraudulent misrepresentation that the pension was not subject to distribution as marital property and she signed the separation agreement because of that misrepresentation.

The cited testimony must be considered with her subsequent testimony on cross-examination.

\* \* \* \* \* \*

"Q  You knew that your holdings consisted primarily of Fredis' interest in the—the benefits with Purina?

A  Yes.

Q  And your—the house?

A  Yes.

Q  And basically those were the two items of property that were subject to division as far as you were concerned?

A  Yes.

Q  And isn't it a true statement, ma'am, that throughout the course of the dissolution, your primary consideration was to obtain the house because you knew that you, having been a real estate person, you knew you'd have difficulty buying another?

A  Well, another reason would have been that there would have been no way I would have been able to have gotten anything from Purina because it had to stay there.  It had to remain with Purina.

Q  Until retirement?

A  Yes.

Q  And you knew that those funds were not available to you presently but would be available at retirement?

A  Yes."

\* \* \* \* \* \*

Purina annually provided the husband with a summary of his benefits with the company.  The wife's testimony established that she saw those summaries and that for a number of years the summaries showed that the husband's monthly pension and social security income would be approximately $2,500 per month.  She also testified that she saw and relied upon a letter from the husband's lawyer to her lawyer.  Portions of that letter will be hereafter quoted.

The wife's present assertion of her interpretation and detrimental reliance must also be considered in the light of her objections to any questions concerning her conversations with her attorney. Those objections were sustained.

"We do not find any violation of the rule that communications between attorney and client are privileged. Having alleged the injuries and testified as to their nature, plaintiff was open to inquiry as to their extent and whether he communicated the facts with reference thereto to his attorney. A client cannot avail himself of the privilege to shield himself from a disclosure of facts which are a legitimate subject of inquiry. *Chellis v. Chapman*, 52 Hun. 613, 7 N.Y.S. 78, aff. 125 N.Y. 214, 26 N.E. 308, 11 L.R.A. 784; 97 C.J.S. Witnesses § 276a, p 785, fn. 69." *Randazzo v. Polizzi*, 366 S.W.2d 380, 385 (Mo.1963).

Also see *Underwood v. State*, 553 S.W.2d 869 (Mo.App.1977). It is significant that the wife prevented inquiry concerning whether or not she relied upon her attorney.

■ It is the general rule that in the absence of extraordinary circumstances a representation of law cannot be the basis of actionable fraud. *Hackett v. St. Joseph Light & Power Co.*, 761 S.W.2d 206 (Mo.App.1988); *City of Gainesville v. Gilliland*, 718 S.W.2d 553 (Mo.App.1986). The evidence supports a finding that the husband was not, 14 months after their separation, in a confidential relationship with the wife and did not possess a knowledge of the law superior to that of the wife who was represented by able counsel. See *City of Gainesville v. Gilliland*, supra.

The trial court made no explicit finding on wife's assertion that "Fredis had committed acts of extrinsic fraud when (1) he orally represented to Mary Jo that she was not entitled by law to any portion of the monthly retirement benefits that had accrued during the course of his employment with Ralston–Purina, Inc." However, "[a]ll fact issues upon which no specific findings are made shall be considered as

having been found in accordance with the result reached." Rule 73.01(a)(2).

The evidence recited above raised the following issues. Did the husband's conversation constitute a positive misrepresentation of law? Did the wife enter into the agreement because of such misrepresentation, or did she do so to obtain the only other substantial asset of the parties, the only major asset immediately available, the house? Did she rely upon her present interpretation of that conversation, or was she advised concerning her rights by her attorney? Was she entitled to rely upon a representation of law by the husband? In view of the result reached, those issues were resolved against the wife and such resolution is supported by the evidence.

■ The wife's next stated reason is that the trial court erred "because Fredis had committed acts of extrinsic fraud when ... (2) in response to a letter inquiring as to the retirement benefits available to Fredis, Fredis' attorney failed to disclose to Mary Jo's attorney any information whatsoever concerning the monthly retirement benefits of $1,525." The wife's lawyer requested information concerning the husband's benefits with Purina. The following was the husband's lawyer's response:

"In an earlier letter, you requested information concerning my client's pension benefits and stock. I am enclosing a copy of a statement of his savings investment plan as of the first quarter, 1987. Additionally, I have determined that my client has retirement plan contributions plus interest of $12,818.

Concerning the division of property, it would appear that my client's savings and retirement plans are more than offset by the equity in the real estate occupied by your client. I am assuming she wishes to retain that property; if so, I feel we can reach an agreement on the distribution of the property."

\* \* \* \* \* \*

The letter and enclosure accurately stated the amount of investment plan and retirement plan contributions. The wife already knew the amount of the husband's retirement income. The fact the husband's at-

torney did not expressly and explicitly advise opposing counsel the pension was marital property subject to distribution cannot be considered a fraudulent misrepresentation. In fact, the second paragraph can only be reasonably construed to imply the distribution of those benefits to the husband as marital property. The wife's second reason has no merit.

Lastly, under a separate subpoint, the wife asserts three reasons the trial court's decision was predicated on incorrect declarations and applications of the law. An extended discussion of those reasons is not necessary. Each has been considered and is determined to be factually unsupported or to have no legal validity. In summary, the decision of the trial court does not erroneously declare or apply the law and is supported by substantial evidence. It is affirmed.

HOGAN and PREWITT, JJ., concur.

CROW, J., recused.